Filed 4/11/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ROBERT PERKIN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY et al.,<br><br>    Defendants and Respondents. | D062923<br><br><br>(Super. Ct. Nos. 37-2008-00093080-CPU-NP-CTL; 37-2011-00097746-CU-NP-CTL ) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed.

Adler Law Group, E. Elliott Adler; The Kane Law Firm, Steven S. Kane, Bonnie E. Kane; Frantz Law Group, James P. Frantz; Niddrie Fish Addams and David A. Niddrie for Plaintiffs and Appellants.

Quinn Emanuel Urquhart & Sullivan, Kenneth R. Chiate, Harry A. Olivar, Jr., Kristen Bird, Jeffrey N. Boozell; Office of the General Counsel and C. Larry Davis for Defendants and Respondents.

Robert and Janet Perkin (together Perkins) appeal a judgment of dismissal entered following the superior court sustaining San Diego Gas & Electric Company and Sempra Energy's (together SDG&E) demurrer to the Perkins' second amended complaint without leave to amend. The superior court found the applicable statute of limitations period, three years, had not been tolled by the pendency of a related class action because the Perkins' home was outside the "fire zone" depicted by a map, which served as an exhibit to one of the class action complaints. We conclude that the related class action complaint did not provide SDG&E with notice of potential claims as required by our high court in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (*Jolly*) and the unique characteristics of the purported class action made clear that the intended class would not be certified. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

"From October through early November 2007, seven Southern California counties were enduring 11 major wildfires, driven by the notorious Santa Ana winds and other adverse weather conditions. In San Diego County, seven of the eight localized fires burned north of Interstate 8 (including [Witch Creek (Witch), Guejito, and Rice Canyon (Rice)], while one more (Harris) burned south of Interstate 8. Some of the fires merged with others and were designated by firefighters and responsible agencies as fire complexes."

---

[1]  We borrow certain background facts from *Downing v. San Diego Gas & Electric Company* (Oct. 27, 2010, D055820) [nonpub.opn.] in which we affirmed the superior court's order denying the requested class certification.

2

"In response to the spread of the fire complexes, starting October 21, 2007 and extending for 16 days, many evacuation orders were issued by the San Diego County Sheriff's Department and other entities, and were lifted at various times. Shelter was provided to evacuees by various governmental and nonprofit agencies. After extensive firefighting efforts, the fires were mainly contained by October 31, 2007, but some continued into early November 2007. These three fires [The Witch, Guejito, and Rice] burned at least 1,424 homes and caused the evacuation of more than 300,000 persons. Eventually, more than 20,000 insurance claims were filed by various residents and businesses for property damage and loss of use."

In the aftermath of the fires, starting in late 2007, lawsuits began to be filed against SDG&E. Some of the first complaints were purported class actions, two of which are relevant here. The first entitled *Clark v. San Diego Gas & Electric Company* (Super. Ct. San Diego County, 2007, No. 37-2007-00081605-CU-NP-CTL) (*Clark* Purported Class Action) was filed November 13, 2007. The second entitled *Downing v. San Diego Gas & Electric*, (Super. Ct. San Diego County, 2007, No. 37-2007-00081604-CU-NO-CTL) (*Downing* Purported Class Action) also was filed on November 13, 2007.

At the same time, complaints were being filed by over 1,000 individual plaintiffs who had determined to pursue individual claims, by insurance companies seeking to recover for payments to their insureds for fire losses, and by government entities seeking to recover for response costs, property damage, and other losses.

On October 10, 2008, the superior court issued a case management order requiring that seven master complaints be filed, separating claims by fire and by type of plaintiff.

3

The superior court ordered that plaintiffs file one master complaint for individual claims related to the Witch and/or Guejito fires, one for individual claims related to the Rice fire, a single master complaint for all class action claims, and four additional master complaints for insurance claims and government claims in the Witch/Guejito and Rice fires. Under the case management order, all claimants were to file complaints that adopted all or part of a relevant master complaint.

The Master Liability-Only Class Action Complaint (Master Class Action Complaint), based on individuals' claims related to the Witch and Guejito fires, was filed on October 3, 2008. It set forth a new class definition, seeking to certify a "Liability-Only Class":

> "All persons and entities who, during the time period of October 21, 2007 through November 5, 2007: A. (i) owned, leased, or rented real property in the GEOGRAPHIC AREA; or (ii) had an ownership interest in a commercial enterprise located in the GEOGRAPHIC AREA; or (iii) resided in or worked in the GEOGRAPHIC AREA; and B. who claim property damage or loss of use of property resulting from . . . the Witch, Guejito, and Rice Fires. This class does not include personal injury claims."

The "GEOGRAPHIC AREA" was defined as "the area of San Diego County, north of Interstate 8, as indicated in the map attached as Exhibit A" to the Master Class Action Complaint. The map attached to the Master Class Action Complaint depicted San Diego County and included a "fire perimeter" for the relevant fires. It had individual dots representing structures that were destroyed, moderately damaged, or minimally damaged. Labels on the map indicated that it was issued by the County of San Diego Department of

4

Planning and Land Use and the San Diego Geographic Information Service, which make their perimeter data available on the Internet.

Based on this class definition, class plaintiffs moved for class certification of the liability-only class. SDG&E opposed class certification on the grounds that the class was not ascertainable, lacked commonality, did not have typical or adequate representatives, and was inferior to individual litigation. Oppositions on similar grounds were also filed by a third party defendant added to the class action by SDG&E, a group of approximately 1,000 individual plaintiffs who had filed individual lawsuits, and a large group of insurer plaintiffs.

After hearing oral argument, the superior court denied certification. It found that the proposed liability-only class lacked predominance of common issues and was not superior to individual litigation. This court affirmed the superior court's order denying class certification.

Between the time of the fires (late Oct. 2007) and the superior court's denial of class certification (June 25, 2009) about 1,400 individual plaintiffs filed lawsuits against SDG&E seeking to recover for fire-related losses. After denial of class certification, but before October 2010, more than 1,750 additional individual plaintiffs filed lawsuits, bringing the total number of plaintiffs who filed within the three-year limitations period to over 3,000. In the latter half of October 2010, almost an additional 400 individual plaintiffs filed claims.

5

There also were several plaintiffs who filed suit after October 2010, more than three years after the subject fires. One such suit is *Laurie v. SDG&E* (Super. Ct. San Diego County, 2011, No. 37-2010-00103378-CU-NP-CTL) (*Laurie* Adoption),[2] which was filed on October 29, 2010. SDG&E demurred to that complaint, arguing that the statute of limitations had expired. In that case, the superior court found that the claims in the *Laurie* Adoption had been tolled:

> "In this case, the class action put Defendants on notice of the potential claims. Although the potential pool of claimants was not as strictly limited as those in *Becker* [*v. McMillin Construction Co.* (1991) 226 Cal.App.3d 1493 (*Becker*)], involving a known number of houses in a development, the boundaries of the fire were known. There is no requirement the precise number of claimants be identified. But it is clear SDG&E was aware of the vast number of homes and businesses which had suffered damages as a result of the fire. The substantive nature of the claims, property damage due to the fires, was also known. That SDG&E did not know the amount of damages is irrelevant, as damages, even in class action, are calculable on an individual basis."

Even later than the *Laurie* Adoption, the Perkins filed suit on September 12, 2011 as a plaintiff in *Frye v. SDG&E* (Super. Ct. San Diego County, 2011, No. 37-2011-0097746-CU-NP-CTL) (*Frye* Adoption). Like the complaint in the *Laurie* Adoption, the complaint in the *Frye* Adoption incorporated by reference certain allegations from the operative Master Class Action Complaint. The Perkins claimed damage to their residence that, based on its address, was located outside of the fire boundaries depicted

---

2    The parties refer to a case filed after the filing of the master complaints as an "adoption" because the subsequently filed complaint adopted specific allegations from one of the master complaints. For example, the complaint in the *Laurie* Adoption incorporates by reference allegations contained in the operative Master Class Action Complaint.

on the map attached to the Master Class Action Complaint, but located above Interstate 8. After a couple rounds of demurrers, the Perkins filed a second amended complaint, which included causes of action for inverse condemnation, trespass, nuisance, and violation of Public Utilities Code section 2106 and again incorporated by reference certain allegations from the operative Master Class Action Complaint. This complaint added more specifics regarding damages and included the allegation that the Perkins' property was within the fire boundaries. SDG&E again demurred, arguing that the Perkins' allegation that the property was within the fire boundaries did not change the address of the property – which was alleged in the second amended complaint and was located outside the fire boundaries as depicted on the Master Class Action Complaint's map. SDG&E also argued that the Perkins' claims were time-barred because class action tolling could not apply given that the requirements set forth in *Jolly*, *supra*, 44 Cal.3d 1103 were not satisfied.

The Perkins opposed SDG&E's demurrer, asserting that class action tolling should be permitted for anybody who claimed property damage as a result of the fires, not just for individuals located within the map's fire boundaries. SDG&E filed a reply.

The superior court overruled the demurrer (subject to further submissions as to fire boundaries), concluding that the allegations in the class action complaints were adequate to toll the statute of limitations. However, the superior court instructed the parties to submit proposals suggesting which fire boundaries should provide the limits for class action tolling. After reviewing the parties' submissions and hearing further argument, the superior court held that class action tolling was limited to properties within the fire

7

boundaries as depicted on the map attached to the Master Class Action Complaint. Thus, claims filed after October 22, 2010 relating to properties outside those boundaries, including the Perkins' claims, were time-barred. As a result, the court ultimately sustained SDG&E's demurrer to the Perkins' second amended complaint, and judgment was entered dismissing the Perkins' claims as time-barred. The Perkins timely appealed.

DISCUSSION

I

*THE TOLLING OF THE STATUTE OF LIMITATIONS*

The parties do not dispute that the applicable statute of limitations is three years from the date of harm. (See Code Civ. Proc., § 338, subds. (b), (c)(1), & (j).) The Perkins allege their home was damaged in the Witch fire, which began on October 21, 2007. They allege their home was damaged because they had to: (1) remove soot and ash deposited on various parts of their home and in their pool filter; (2) clean ventilation, heating, and air conditioning ducts obstructed by the fire; and (3) repair windows and garage doors damaged by the fire. The Perkins do not allege precisely when their home was damaged, but because they attribute the damage to the Witch fire, their home must have been damaged sometime in late October 2007. The three-year statute of limitations for their claims arising out of the fire therefore would expire no later than the end of October 2010. The Perkins, however, did not file suit until January 13, 2012, well over a year after the statute of limitations had expired. As such, their claims are time-barred unless they were tolled.

8

The Perkins contend the statute of limitations on their claims were tolled under the rule created by *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 (*American Pipe*) and limited in *Jolly*, *supra*, 44 Cal.3d 1103. The Perkins argue the superior court erred in reaching the opposite conclusion because: (1) the original complaints in the *Clark* Purported Class Action and the *Downing* Purported Class Action provided SDG&E with notice of the potential claims against them (including the Perkins' claims), and therefore, the statute of limitations was tolled; and (2) the superior court improperly relied on the "fire boundaries" from the map attached as Exhibit A to the Master Class Action Complaint in determining tolling did not apply. We address the Perkins' second contention first because, within that argument, they raise the permissible scope of our review here.

### A. The Map of the Fire Perimeter

The superior court based its conclusion that the Perkins' claims were time-barred on its finding that only homes that were within the fire perimeter as shown on the map attached as Exhibit A to the Master Class Action Complaint could benefit from the tolling of the statute of limitations. The Perkins argue this conclusion was improper because it required the court to make a finding of fact, namely the extent of the fire perimeter and whether the Perkins' home was located within that perimeter. SDG&E counters that the court did not have to make any finding of fact, but merely had to determine if the Master Class Action Complaint provided SDG&E with sufficient notice of the Perkins' claims. We agree with the Perkins to the extent they argue it was improper for the superior court to use the map to determine if tolling applies.

9

The map with the fire boundaries first appeared as Exhibit A to the Master Class Action Complaint. That complaint used the map to help define the term "GEOGRAPHIC AREA," which in turn, was part of the class definition. The Master Class Action Complaint defined the "GEOGRAPHIC AREA" as "the area of San Diego County, north of Interstate 8, as indicated in the map attached as Exhibit A." As discussed above, the map, however, was not merely a map of San Diego County. Instead, it included various fire perimeters, and within those perimeters, the map indicated houses that were "destroyed" or sustained "moderate damage" or "minimal damage" from the various fires.

The parties do not argue that the map was involved in the motion to certify the liability-only class. Instead, the map appears to have first played a role in any of the fire-related cases when the court overruled, in part, SDG&E's demurrer to the complaint in the *Laurie* Adoption because "the boundaries of the fire were known" and the "substantive nature of the claims, property damage due to fires, was also known." Therefore, in finding tolling appropriate as to the *Laurie* plaintiffs, the superior court found SDG&E's knowledge of the boundaries of the fire critical. Those fire boundaries are only defined in the map attached as Exhibit A to the Master Class Action Complaint and incorporated by reference in the Perkins' complaint. It appears from the record that the court used the fire boundaries from the map because, without the map, the class definition "would basically leave SDG&E open to claims from plaintiffs across all of Southern California, essentially tolling the statute of limitations for almost anyone." In other words, the superior court did not find that the class definition absent the map

10

provided SDG&E with the requisite notice to toll the statute of limitations as required by *American Pipe*, *supra*, 414 U.S. 538 and *Jolly*, *supra*, 44 Cal.3d 1103.

However, in a pragmatic compromise, the court used the map to toll the statute of limitations as to any plaintiff whose property was damaged inside the fire perimeter, but not so for those with property out of it. Thus, the statute of limitations on the *Laurie* plaintiffs' claims was tolled because their home was located within the fire boundary as indicated by the Master Class Action Complaint. Because the Perkins' home was outside the fire perimeter, the court found their claims were not tolled.

We share the superior court's concern regarding the proposed class definition in the Master Class Action Complaint. It is extremely broad and, if we accept the Perkins' contentions, would toll the statute of limitations for any person who owns or lives in a home in San Diego County above Interstate 8 whose property was damaged in some way from the Witch or Guejito fires. Nevertheless, we see no basis for allowing the superior court to use the map to narrow the class definition. Indeed, we struggle to understand the definition of "GEOGRAPHIC AREA" with its reference to the map in the Master Class Action Complaint. If the drafters of the Master Class Action Complaint had only intended the map to depict the area north of Interstate 8, it begs the question why they would attach a map containing such detailed information like fire perimeters and damaged or destroyed homes. Further, we also are puzzled why the drafters felt the need to include any map whatsoever. The complaint was filed in San Diego Superior Court and named defendants based in San Diego. It would have been a safe assumption that all parties as well as the court were aware of the area of San Diego County above

11

Interstate 8. The Master Class Action Complaint's inclusion of the map does not help define the "GEOGRAPHIC AREA"; it only obscures the definition. The court and the defendants are left to guess regarding the importance of the information contained in the map, namely the fire perimeters and damaged homes.

We understand why the superior court used the map and do not discount its usefulness in administering the large number of cases arising out of the fires. That said, we find no support in the record that the map was proposed to narrow the class definition or otherwise intended by the plaintiffs to define the class beyond the actual words of the complaint. Nor do we see any indication in the record that SDG&E relied on the map in challenging the class allegations or otherwise used the map beyond its demurrer to the Perkins' complaint, which occurred after the court applied the map to find the *Laurie* plaintiffs' claims tolled. As such, we do not conclude the map is useful or proper in determining if the Perkins' causes of action should be tolled.

### 1. *The Scope of this Appeal*

Even though we conclude the court erred in considering the map in finding the Perkins' claims were not tolled, our analysis does not end there. In reviewing the sustaining of a demurrer, we review the trial court's result for error, and not its legal reasoning. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.) The Perkins argue that by way of this appeal, SDG&E seeks to improperly relitigate past issues. Specifically, the Perkins maintain SDG&E is challenging the superior court's ruling on the demurrer to the complaint in the *Laurie* Adoption because SDG&E asserts tolling was not appropriate here in any event, not merely whether tolling is limited to the homes

12

within the fire perimeter found in the map. Moreover, the Perkins assert if we agree with this argument our opinion could impact several other cases not part of this appeal. However, we only consider matters that are before us. Here, we are not reviewing the court's minute order in the *Laurie* Adoption. Nor are we analyzing the tolling as to hundreds of other individual actions filed after the statute of limitations. We are only concerned with the Perkins' claims within the complaint in the *Frye* Adoption.

In the instant matter, we must determine if the superior court correctly sustained SDG&E's demurrer to the Perkins' claims. To do so, we must consider whether tolling applies to the Perkins' claims under *American Pipe*, *supra*, 414 U.S. 538 and *Jolly*, *supra*, 44 Cal.3d 1103. The parties thoroughly briefed this issue. And SDG&E raised this issue in its demurrer to the Perkins' operative complaint below. We therefore reach the issue of the applicability of the tolling rule created by *American Pipe* and limited in *Jolly* to the Perkins' claims. (See *Carman v. Alvord* (1982) 31 Cal.3d 318, 324 ["A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground."].)

## B. Tolling Absent the Map

Citing *American Pipe*, *supra*, 414 U.S. 538, the Perkins contend "[t]he filing of the class action complaints tolled the statute of limitations." However, *American Pipe* does not support a general rule that the mere filing of a class action complaint automatically tolls the statute of limitations for all claims of any potential class member. Instead, the rule is more nuanced and was limited by our high court in *Jolly*, *supra*, 44 Cal.3d 1103.

13

In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." (*American Pipe*, *supra*, 414 U.S. at p. 554.)  In that case, the court balanced the policies served by the class action rule, Federal Rules of Civil Procedure, rule 23, and the policies served by the statute of limitations.  The case arose under the Sherman Antitrust Act and was brought as a putative class action.  After the district court denied class certification, several would-be class members moved to intervene.  Although the applicable statute of limitations had run as to the intervenors, the Supreme Court held that their claims were not time-barred because the filing of the putative class action tolled the statute of limitations as to all alleged class members until the district court denied certification, "at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable.' " (*American Pipe*, *supra*, at pp. 552-553.)  In explaining the purpose of allowing tolling, the Supreme Court reasoned:

> "The policies of ensuring essential fairness to defendants and of
> barring a plaintiff who 'has slept on his rights,' [citation] are satisfied
> when, as here, a named plaintiff who is found to be representative of
> a class commences a suit and thereby notifies the defendants not
> only of the substantive claims being brought against them, but also
> of the number and generic identities of the potential plaintiffs who
> may participate in the judgment." (*Id*. at pp. 554-555.)

Prior to the California Supreme Court addressing the tolling rule from *American Pipe*, *supra,* 414 U.S. 538, a California Court of Appeal applied the tolling rule to a new set of facts in *Bangert v. Narmco Materials, Inc.* (1984) 163 Cal.App.3d 207 (*Bangert*).

14

In that case, the Court of Appeal concluded the filing of a class action complaint for both personal injury and property damage tolled the running of the statute of limitations for all members of the purported class, which consisted of "all persons similarly situated" who were currently residing within a one-third mile radius of a certain plastic research plant. (*Id*. at pp. 209, 212-213.) These purported class plaintiffs were seeking injunctive relief as well as damages stemming from injuries caused by chemical air and water pollution emanating from a factory over a 31-year period. (*Id*. at p. 209.) Ninety-two individuals sought to file an amended complaint after the statute of limitations had run on their claims and the superior court denied a motion to certify the class. The Court of Appeal reasoned that applying the tolling rule was "the best approach to the problems posed by purported class members who seek to intervene following the denial of class action status." (*Id*. at p. 212.) The court noted that the defendant had the essential information necessary to determine both the subject matter and size of the prospective litigation based on the purported class action complaint. (*Ibid*.)

In *Jolly*, *supra*, 44 Cal.3d 1103, our high court considered the tolling rule set forth in *American Pipe*, *supra*, 414 U.S. 538 and applied it to an action filed after the applicable statute of limitations by a plaintiff seeking personal injury caused by an allegedly defective drug. In doing so, the court outlined two major policy considerations that the tolling rule was designed to accommodate. The first was protection of efficiency and economy in litigation as promoted by the class action device so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified. To this end, the California Supreme Court

15

noted that tolling should apply especially in situations where a court denied class certification because of " 'subtle factors,' unforeseeable by class members."[3] (*Jolly*, *supra*, at p. 1121.)

The second policy consideration was effectuation of the purpose of the statute of limitations to protect a defendant from unfair claims. (*Jolly*, *supra*, 44 Cal.App.3d at pp. 1121-1122.) In support of this policy consideration, the court stressed the importance of the purported class action complaint providing the defendant with notice of the " 'substantive claims being brought against them' " as well as the " 'number and generic identities of the potential plaintiffs.' " (*Ibid.*, quoting *American Pipe*, *supra*, 414 U.S. at pp. 554-555.)

In *Jolly*, *supra*, 44 Cal.3d at page 1120, our Supreme Court characterized the holding of *Bangert*, *supra*, 163 Cal.App.3d 207 as an extension of the *American Pipe* reasoning: not only denials of certification for lack of numerosity could lead to tolling, but also, after *Bangert*, denials for lack of an adequate community of interest could serve

---

3      For example, in *American Pipe*, *supra*, 414 U.S. 538, the district court denied class certification based on its conclusion that the number of potential members was not so large as to make joinder impracticable on inferences from its prior experience with similar antitrust litigation against the same defendants. The Supreme Court noted that it would be difficult for any individual plaintiff to predict a district court's estimate of the expected attrition among the class of plaintiffs. (*Id.* at p. 553, fn. 23.) This scenario plus other federal courts indicating that subsequent attrition will not be regarded as a factor affecting numerosity under Federal Rules of Civil Procedure, rule 23(a)(1) when considered at the outset of the case (see, e.g., *Iowa v. Union Asphalt & Roadoils, Inc.* (S.D. Iowa 1968) 281 F.Supp. 391, 401) led the Supreme Court to determine that the purported class was found unsuitable "upon considerations that may vary with such subtle factors as experience with prior similar litigation or the current status of a court's docket . . . ." (*American Pipe*, *supra*, at pp. 553-554.)

16

to toll the statute. To analyze the correctness of that extension, the court in *Jolly* reviewed the *American Pipe* rationale and compared the nature of the class action suit on which Ms. Jolly relied to create tolling (*Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588 [alleging the synthetic drug estrogen diethylstilbestrol (DES) had caused injury]) to the nature of Ms. Jolly's individual action. In comparing the two actions, the court found inadequate notice to the defendants had been given in the earlier action and disallowed tolling. The discrepancies between the nature of the relief sought in *Sindell* and *Jolly* (declaratory relief and damages, respectively) and the factual and legal issues in the two actions (causation of injury and damages) were too great for any notice to be presumed. Considerations of protecting the class action device gave way to the stronger consideration under the circumstances: protecting the defendant from unfair claims.

Most of our high court's discussion in *Jolly*, *supra*, 44 Cal.3d 1103, of the rationale in *American Pipe*, *supra*, 414 U.S. 538, focused on the requirement of adequate notice to the defendant to trigger the doctrine of tolling. The court cautioned against a potential danger of abuse of the "generous"[4] rule of *American Pipe*: Class actions might be filed merely to evade limitations periods. (*Jolly*, *supra*, 44 Cal.3d at p. 1124.) To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence. (*Ibid.*)

---

4    See *Crown, Cork & Seal Co. v. Parker* (1983) 462 U.S. 345, 354 (Powell, J., conc.).

17

The court in *Jolly*, *supra*, 44 Cal.3d at page 1125, warned that in the application of the *American Pipe* rule to personal injury mass tort cases, the presumption should be that "lack of commonality will defeat certification and preclude application of the *American Pipe* tolling doctrine." (*Jolly*, *supra*, at p. 1125.) In a footnote dealing with alternative procedures, the court further commented, "[W]e believe class actions can rarely be appropriate for resolution of mass tort claims. . . ." (*Id.* at p. 1125, fn. 19.) However, the court declined to decide the general issue of "whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately is denied certification for lack of commonality." (*Id.* at p. 1125.) Therefore, the opinion concluded somewhat narrowly: "[W]e find that plaintiff and other similarly situated plaintiffs seeking personal injury damages in DES cases may not rely on the *Sindell[, supra,* 26 Cal.3d 588] class action suit [citation] to toll the statute of limitations pursuant to *American Pipe[, supra,* 414 U.S. 538]."[5] (*Jolly*, *supra*, at p. 1126.)

The Perkins' opening brief limits its discussion of *American Pipe*, *supra*, 414 U.S. 538 and *Jolly*, *supra*, 44 Cal.3d 1103. Instead, the Perkins focus on *Becker, supra,*

---

[5] In a footnote at the end of its opinion, our Supreme Court decreed: "Insofar as *Bangert . . .* is inconsistent with our holding, that case is disapproved." (*Jolly*, *supra*, 44 Cal.3d at p. 1126, fn. 20.) However, in *Becker*, *supra*, 226 Cal.App.3d 1493, this court determined *Bangert*, *supra*, 163 Cal.App.3d 207 had not been disapproved in the limited context of leaving open the possibility that a class action based on tort, especially a property damage case, could provide adequate notice to a defendant to toll the statute of limitations, even where class certification was denied for lack of common questions. (*Becker*, *supra*, at p. 1501.)

226 Cal.App.3d 1493, and argue that case is instructive here. We do not share the Perkins' expansive reading of *Becker*.

In *Becker*, *supra*, 226 Cal.App.3d 1493, we concluded that tolling applied to individual homeowners who would have been members of a purported class alleging construction defects at residences in a specific single family home development. (*Id.* at p. 1501.) In doing so, we reviewed our high court's discussion of tolling in *Jolly*, *supra*, 44 Cal.3d 1103, and determined that the court's holding was a narrow one, and applied the *American Pipe* tolling rule in a factually different context from the mass tort personal injury case presented in *Jolly*. We thus concluded "it is possible for some prior class actions based on tort, particularly property damage cases, to provide adequate notice to a defendant so that tolling is proper . . . ." (*Becker*, *supra*, at p. 1501.)

Although lack of commonality led to denial of class certification in the superior court, we determined that the substantive class and individual claims were sufficiently similar to give the developer notice of the litigation for purposes of applying the tolling rule. (*Becker*, *supra*, 226 Cal.App.3d 1493.) Further, the class action alleged claims for negligence and strict liability, the same claims that Becker later raised in his individual action. (See *id.* at pp. 1496, 1501-1502.) Once the class action was filed, the developer was aware of the need to preserve evidence and witnesses regarding the claims of all class members. (*Id.* at p. 1501.) And we found that variations of proof in causation and damage were not as extreme in the construction defect context as they would be in personal injury mass tort cases. (*Id.* at p. 1502.) Therefore, we concluded "[r]ules

19

regarding notice should accordingly be less stringent for this type of property damage where tolling is concerned."  (*Ibid*.)

In addition, we found it significant that the defendant was on notice that any future individual claims would be made by a certain number of homeowners from a specific subdivision consisting of 620 homes.  Thus, the defendant reasonably knew the "identity and number of potential claimants."  (*Becker*, *supra*, 226 Cal.App.3d at p. 1501.)

However, despite determining that tolling was appropriate, we cautioned against an expansive reading of our opinion:

> "Finally, we add our voice to those of other courts which have warned against a too liberal interpretation of the rule set out in *American Pipe*, *supra*, 414 U.S. 538.  It must be emphasized that in some ways this was an unusual class action effort . . . .  Thus, our decision should not be broadly construed to apply to any and all construction defect cases.  Here, however, both the [purported class action] and Becker's individual action were based on the same type of claim and the same subject matter; the class of potential plaintiffs was finite and could be located through their residences in the development.  Consistent with the Supreme Court's approach in *Jolly, supra*, 44 Cal.3d 1103, the applicability of *American Pipe* can only be determined by individualized attention to the identity of the claimants and the nature of the claims involved, and by a careful weighing of the important policy considerations in this area."
> (*Becker*, *supra*, 226 Cal.App.3d at p. 1502.)

The Perkins contend that *Becker* stands for the proposition that in a property damage case, the "affected property and property owners are more readily identifiable as to the number and generic identity, making it more reasonable to expect a defendant to be put on some degree of notice of the extent of the claim by the pending class action." (*Becker*, *supra*, 226 Cal.App.3d at p. 1501.)  To this end, the Perkins correctly note the importance of providing notice to the defendants of potential claims and claimants to

20

trigger the doctrine of tolling. The Perkins reason that the original complaints filed in the *Clark* Purported Class Action and the *Downing* Purported Class Action provided the required notice.

In the *Clark* Purported Class Action, the original complaint described the purported class as follows: "[T]he class . . . is composed of all persons and entities who owned property destroyed or damaged by the Witch . . . fire in the State of California . . . ." The complaint alleged that the Witch fire "covered 197,990 acres" and destroyed "an estimated 911 homes, 30 commercial buildings, 175 outbuildings and 239 automobiles" and damaged "an estimated 62 residences, 10 commercial properties and 50 outbuildings." In the original complaint in the *Downing* Purported Class Action, the class definition was equally broad, but related to a different fire: "This is a class action for economic damages and injunctive relief on behalf of all persons whose property was destroyed by the '[Rice] fire' . . . in the State of California." That complaint alleged the Rice fire "covered over 9,000 acres" and destroyed "an estimated 206 homes, including 120 mobile homes, two commercial buildings and 40 outbuildings."

As a threshold matter, the original complaint in the *Downing* Purported Class Action could not have provided notice to SDG&E about the Perkins' claims. That complaint concerned a class of people who owned property that was destroyed in the Rice fire. The Perkins would not have been members of that class. Their home was not destroyed by the Rice fire. Instead, the Perkins claim their house was damaged by the Witch fire. As such, we only consider whether the original complaint in the *Clark* Purported Class Action provided SDG&E with the required notice.

21

Although we did not set forth the purported class in *Becker*, *supra*, 226 Cal.App.3d 1493, we did make clear that the filing of the class action on construction defect claims put the defendant "on notice that a certain number of homeowners in [a] specific subdivision were experiencing construction defects." (*Id*. at p. 1501.) In that regard, "the identity and number of potential claimants were thus ascertainable to a significant degree that was adequate to give the required notice of the addresses potentially involved in that action." (*Ibid*.) In other words, the potential plaintiffs were limited to a set number of homeowners within a known residential subdivision containing a defined number of homes and would make claims of certain construction defects.

In contrast, the proposed class in the *Clark* Purported Class Action did not provide similar notice. There, potential plaintiffs were not limited to a set number from a specific, clearly defined area, claiming a certain type of damage. Instead, would-be plaintiffs could be found anywhere in California claiming that their properties were damaged in some way by the Witch fire. Such a broad description did not provide SDG&E with the "number and generic identities of the potential plaintiffs" (see *American Pipe*, *supra*, 414 U.S. at p. 555) that we found acceptable in *Becker*, *supra*, 226 Cal.App.3d 1493. Unlike the purported class in *Becker*, the purported class described in the original complaint in the *Clark* Purported Class Action could have been any resident of California whose property was somehow damaged by the Witch fire. Accordingly, that purported class was much more similar to purported class of "female residents in

22

California" that the court found insufficient to initiate tolling in *Jolly*, *supra*, 44 Cal.3d 1103.[6] (See *id.* at pp. 1120, 1123-1124.)

In addition, we find the equities to favor the plaintiffs in *Becker*, *supra*, 226 Cal.App.3d 1493 much more than the Perkins. In *Becker*, the statute of limitations on the plaintiffs' individual claims had expired prior to the court ruling on class certification. (*Id.* at pp. 1496-1497.) Here, the Perkins had 16 months after the court denied class certification in which to file suit. They did not do so. This inaction raises concerns that the Perkins " 'slept on [their] rights.' " (See *American Pipe*, *supra*, 414 U.S. at pp. 554-555.) They clearly knew that they suffered damage shortly after the Witch fire. The damages they allege stem from cleaning up soot and ash as well as restoring and re-staining stained glass windows damaged by the fire. There does not appear any explanation in the record illuminating why the Perkins waited so long to file suit. For this reason as well, we determine it would be inequitable to apply the tolling doctrine here. (See *Becker*, *supra*, 226 Cal.App.3d at p. 1500, discussing *Jolly*, *supra*, 44 Cal.3d 1103.)

The deficiency in the notice provided by the original complaint in the *Clark* Purported Class Action is alone sufficient to deny the Perkins relief under *American Pipe*,

---

6       The Perkins do not argue that the Master Class Action Complaint provided SDG&E with sufficient notice to trigger tolling of the statute of limitations. Although the class definition in the Master Class Action was more narrow than the class definition in the original complaint in the *Clark* Purported Class Action, we would determine that the Master Class Action Complaint class definition was still too broad and thus did not provide SDG&E with sufficient notice under *American Pipe*, *supra*, 414 U.S. 538; *Jolly*, *supra*, 44 Cal.3d 1103; and *Becker*, *supra*, 226 Cal.App.3d 1493.

*supra*, 414 U.S. 538.  However, we also conclude that the application of tolling does not apply here because the requirement that tolling protect the "class action device" is not satisfied.  (See *Jolly*, *supra*, 44 Cal.3d at p. 1121.)

Here, the superior court did not deny class certification because of "subtle factors" unforeseeable by class members.  (See *American Pipe*, *supra*, 414 U.S. at p. 553; *Jolly*, *supra*, 44 Cal.3d at p. 1121.)  To the contrary, many purported class members opposed class certification, arguing, among other points:  (1) the proposed class is fatally flawed as defined; (2) numerous and important individual questions predominate over common ones; and (3) the class action is not superior to individual actions.  SDG&E, another defendant, and insurance companies made similar arguments.  The superior court agreed and denied certification because it found insufficient commonality and the class action was not superior to individual litigation.

Also, prior to the superior court's denial of class certification, more than 1,400 plaintiffs filed individual suits against SDG&E.  Thus, applying tolling to the Perkins' claims would not protect the class action device as many individual plaintiffs did not want to be a member of any purported class and/or believed a class action inappropriate.  These individual plaintiffs already had filed suits motivated by their belief that their claims should not be brought by way of a class action.

## C.  The Perkins' Other Contentions

The Perkins also contend that tolling is appropriate here because SDG&E had notice of the extent of the fires, the potential claims, and the generic identity of the plaintiffs based on SDG&E's own investigation and media reports.  The Perkins,

however, fail to provide any authority permitting a court to look beyond the subject class action complaint and the subsequent individual complaint to determine if tolling is appropriate. In the absence of such authority, we do not consider the impact of SDG&E's investigation of the fires in evaluating the Perkins' argument that the statute of limitations on their claims was tolled. Instead, we follow *American Pipe*, *supra*, 414 U.S. 538; *Jolly*, *supra*, 44 Cal.3d 1103; and *Becker, supra*, 226 Cal.App.3d 1493. Under this precedent, we conclude the superior court did not err in finding the statute of limitations on the Perkins' claims should not be tolled.

## DISPOSITION

The judgment is affirmed. SDG&E is awarded its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.

25