Filed 8/28/23  Gularte v. Southern Cal. Edison Co. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| FRANCIS B. GULARTE, | B320793 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV42579) |
| v. | |
| SOUTHERN CALIFORNIA EDISON COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daniel J. Buckley, Judge.  Affirmed.

Singleton Schreiber, Benjamin I. Siminou, Harini P. Raghupathi, and Jonna D. Lothyan for Plaintiff and Appellant.

Hueston Hennigan, John C. Hueston, Douglas J. Dixon, Craig A. Fligor; Belynda S. Reck, Patricia A. Cirucci, and Brian Cardoza for Defendant and Respondent.

_____

Francis B. Gularte appeals the trial court's order sustaining Southern California Edison Company's (Edison) demurrer to his complaint, which sought relief for damages caused by the Thomas Fire, a massive wildfire that engulfed large portions of Santa Barbara and Ventura Counties. We hold that Gularte's complaint was barred by the statute of limitations and his causes of action were not tolled under the class action tolling rule articulated in *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 (*American Pipe*) and *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (*Jolly*). Accordingly, we affirm.

**BACKGROUND**

## I.    The Thomas Fire

The Thomas Fire began on December 4, 2017, when Edison's electrical equipment allegedly ignited surrounding vegetation south of Thomas Aquinas College from which the fire gets its name.

When the Thomas Fire was finally contained on January 12, 2018, it was the largest wildfire in California's history. It burned 281,000 acres in Santa Barbara and Ventura Counties, resulted in numerous fatalities and injuries, destroyed more than 1,000 structures (including 775 homes), forced over 100,000 residents to evacuate, caused over 250,000 residents to lose power, and forced numerous highway and road closures that severely restricted access to the affected areas.

In addition to the extensive damages caused directly by the flames and smoke, the Thomas Fire combined with heavy rains resulted in devastating mudslides that killed at least 21 people and destroyed or damaged more than 450 homes. The mudslides ruptured gas mains, caused power outages, and compromised the affected area's water supply. The mudslides also forced the

2

closure of U.S. Highway 101 and other roads, making travel to some areas impossible.

## II. Class action complaint

On January 24, 2018, less than two weeks after the Thomas Fire was contained, a group of individuals and entities filed a class action complaint against Edison in the Los Angeles Superior Court, alleging they had suffered property, economic, and evacuation-related damages because of the fire and subsequent mudslides.  (*Frost v. Southern California Edison Co.* (Super. Ct. L.A. County, 2018, No. BC691146 (*Frost*).)  The *Frost* complaint alleged causes of action for negligence, inverse condemnation, public nuisance, private nuisance, premises liability, trespass, violation of Public Utilities Code section 2106, violation of Health and Safety Code section 13007, and negligent interference with prospective economic advantage.

The *Frost* complaint's class definition included "all individuals residing in California who, as of December 4, 2017 and/or January 9, 2018, lived in, worked in, were offered and accepted work in, or owned or leased real or personal property" in Santa Barbara and Ventura Counties.  It also included all California entities that owned, operated, or leased a physical facility; provided services while physically present; or owned or leased real property in Santa Barbara and Ventura Counties.

In April 2018, *Frost* was coordinated with other Thomas Fire cases into Judicial Council Coordination Proceeding No. 4965.  In July 2018, the trial court allowed individual Thomas Fire suits to proceed but indefinitely stayed all putative class claims, including *Frost*.  To date, the *Frost* class has not been certified.

3

### III.  Gularte's complaint

On November 18, 2021, Gularte filed an individual action against Edison, alleging causes of action for inverse condemnation, negligence, trespass, nuisance, violation of Public Utilities Code section 2106, and violation of Health and Safety Code section 13007.

The complaint contains few individual details regarding Gularte or the damages he suffered.  It identified Gularte as "an individual who was, at all times relevant to this pleading, homeowner, business owners [*sic*], resident, occupant, and/or had property located in Ventura and Santa Barbara Counties."  The complaint alleged that the Thomas Fire caused Gularte to suffer substantial harm, including "damage to and/or . . . out-of-pocket expenses directly and proximately incurred as a result of the fire; alternative living expenses; evacuation expenses; personal injuries; wrongful death; medical bills; lost wages; loss of earning capacity; loss of business income and/or goodwill; and various types of emotional distress, annoyance, inconvenience, disturbance, mental anguish, and loss of quiet enjoyment of property."

To address the applicable three-year statute of limitations, Gularte alleged his delayed discovery of Edison's wrongdoing and that his causes of action were subject to class action tolling.  With regard to class action tolling, Gularte alleged his claims were "identical" and relied on the "same facts" as *Frost*, and that "he would fit into a subclass" under the proposed class definition.  Although Gularte did not identify *Frost* in his complaint, Edison deduced, and Gularte later confirmed, he was referring to that case.

4

## IV.    Edison's demurrer

Edison demurred to Gularte's complaint on the grounds that his causes of action were time-barred under Code of Civil Procedure section 338, subdivisions (a), (b), and (j)'s three-year statute of limitations, including the additional 178 days from April 6, 2020 to October 1, 2020, that was afforded to all California plaintiffs' civil causes of action due to the COVID-19 pandemic.  (See Cal. Rules of Court, Emergency rule 9(a) ["Notwithstanding any other law, the statutes of limitations . . . for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020"].)  Because Gularte alleged that his property was damaged by the Thomas Fire on December 4, 2017, the statute of limitations for each of his causes of action ran on May 31, 2021.  Gularte filed his complaint 171 days later on November 18, 2021, and did not dispute that the applicable statutes of limitations had lapsed.  However, he argued that his claims should be tolled by the delayed discovery rule and tolled by *Frost* under *American Pipe* and *Jolly*.

The trial court sustained Edison's demurrer, finding that the complaint failed to allege facts supporting delayed discovery or that *Frost* tolled the statute of limitations under *American Pipe* and *Jolly*.  Because Gularte did not provide additional allegations to cure his defective complaint, the trial court denied leave to amend.

Gularte appealed.

## DISCUSSION

## I.    Standard of review

We review an order sustaining a demurrer de novo. (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415.)  We exercise our independent judgment to determine

5

whether the complaint states a cause of action as a matter of law. (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016.) We accept as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We will affirm the judgment of dismissal if the demurrer was proper on any grounds even if the trial court sustained the demurrer on a different basis. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.) The plaintiff bears the burden on appeal to show the trial court erred by sustaining the demurrer. (*Rakestraw v. California Physicians' Service* (2020) 81 Cal.App.4th 39, 42–43.)

"A statute of limitations defense may be asserted by general demurrer if the complaint shows on its face that the statute bars the action." (*SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 316.) " 'In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " (*Geneva Towers Ltd. Partnership v. City of San Francisco* (2003) 29 Cal.4th 769, 781.)

We review the trial court's denial of leave to amend for abuse of discretion. (*Traders Sports v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43.) The plaintiff must show there is a reasonable possibility that the defective complaint can be cured by amendment. (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 841–842.)

## II.    Class action tolling under *American Pipe* and *Jolly*

Gularte's sole contention on appeal is that *Frost* tolled the statute of limitations for his individual claims under the class action tolling rule established by the United States Supreme

Court in *American Pipe, supra*, 414 U.S. 538, and adopted by our Supreme Court in *Jolly*, *supra*, 44 Cal.3d 1103. Gularte abandoned his delayed discovery argument on appeal.

In *American Pipe*, the United States Supreme Court held where class certification has been denied for a failure to demonstrate that the class is so numerous that joinder of all class members is impracticable, the filing of the class action tolls the statute of limitations for members of the putative class, who make timely motions to intervene. (*American Pipe, supra*, 414 U.S. at pp. 552–553.) The *American Pipe* court believed its holding would preserve the efficiency and economy of class action litigation, by circumventing the need for potential class members to file preventative motions to intervene prior to class certification in the event certification was denied for unforeseeable and "subtle" factors. (*Id.* at pp. 553–554.)

*American Pipe, supra*, 414 U.S. at page 554, explained that its holding was consistent with statutes of limitations, which are " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " This is because when plaintiffs commence a class action, defendants may be put on notice "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (*Id.* at pp. 554–555.) Thus, the filing of a class action may provide defendants with the essential information necessary to determine both the subject matter and size of the prospective litigation. (*Id.* at p. 555.)

In interpreting *American Pipe*, our Supreme Court in *Jolly* directed lower courts to consider two primary policy

7

considerations before applying *American Pipe*'s class action tolling rule:  (1) the protection of the class action device, and (2) the effectuation of the purpose of the statute of limitations. (*Jolly*, *supra*, 44 Cal.3d at p. 1119.)

On the first consideration, *Jolly* explained that courts must determine whether tolling would serve to further the efficiency and economy of class action litigation.  (*Jolly*, *supra*, 44 Cal.3d at p. 1122.)  Courts must ask whether failure to apply class action tolling would induce individuals to file protective motions to intervene in the event class certification was denied for "subtle" factors unforeseeable by potential class members.  (*Id.* at p. 1121.)  This will depend on whether the claims asserted on behalf of the putative class were sufficiently similar to the absent class members' individual claims, such that the absent class members would have reasonably relied on the class action and postponed filing individual lawsuits.  (*Id.* at p. 1125.)

Regarding the second consideration, *Jolly* emphasized the importance of avoiding a particular abuse that would arise if plaintiffs were " 'free to raise different or peripheral claims following denial of class status,' " and admonished trial courts to " 'take care to ensure that the suit raises claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," so that "the defendant will not be prejudiced." ' " (*Jolly*, *supra*, 44 Cal.3d at p. 1124.)  *Jolly* instructed lower courts to "exercise discretion in applying the *American Pipe* rule in order to 'prevent the type of abuse mentioned above and [to] preserve a defendant whole against prejudice arising from claims for which he has received no prior notice.' " (*Id.* at p. 1125.)

Ultimately, *Jolly* held that both *American Pipe* policy considerations are satisfied when: " 'a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.' " (*Jolly*, *supra*, 44 Cal.3d at p. 1121.)

Applying these policy considerations to the facts before it, the *Jolly* court found class action tolling did not apply. (*Jolly*, *supra*, 44 Cal.3d at p. 1122.) The individual plaintiff in *Jolly* sued various pharmaceutical companies for personal injuries caused by a drug that her mother ingested during pregnancy. (*Id.* at p. 1120.) Because her claims were barred by the applicable statute of limitations, the plaintiff argued a prior class action involving the same drug tolled her individual causes of action under *American Pipe*. (*Jolly*, at p. 1120.)

In declining to apply class action tolling, the *Jolly* court found the prior class action neither put defendants on notice of the substance and nature of the individual plaintiff's claims, nor served to further the economy and efficiency of class action litigation. (*Jolly*, *supra*, 44 Cal.3d at p. 1122.) *Jolly* noted that the class action procedure had "consistently been rejected" in other cases that involved the same drug at issue. (*Id.* at p. 1123.) The court also found that the same reasons that rendered mass-tort claims generally unsuitable for class certification supported its decision not to apply class action tolling under *American Pipe*, explaining the major elements in tort actions for personal injury will vary widely from claim to claim. (*Ibid.*) Thus, the filing of the class action "could not have apprised defendants of plaintiff's substantive claims." (*Ibid.*)

9

Although *Jolly* stopped short of categorically barring class action tolling in mass-tort actions, it warned that because those cases "can rarely meet the community of interest requirement in that each member's right to recover depends on facts peculiar to each particular case, such claims may be presumptively incapable of apprising defendants of 'the substantive claims being brought against them,' " which was a prerequisite to apply class action tolling under *American Pipe*. (*Jolly*, *supra*, 44 Cal.3d at p. 1125.)

## III. Gularte's claims were not tolled by *Frost*

We conclude class action tolling under *American Pipe* and *Jolly* does not apply here, therefore, Gularte's complaint is time-barred.

*Jolly* did not create a categorical bar to class action tolling in mass-tort actions, however, we find that *Frost*, which has been coordinated with thousands of other individual lawsuits related to the Thomas Fire, is "presumptively" incapable of apprising Edison of the substantive claims being brought against it, including Gularte's. (*Jolly*, *supra*, 44 Cal.3d at p. 1125.) *Frost*'s class definition is so broad, encompassing every individual and entity in California with some connection to the massive area affected by the Thomas Fire, who suffered any kind of property, economic, or evacuation-related damages, that it could never sufficiently notify Edison of "the number and generic identities of the potential plaintiffs who may participate in the judgment." (*Id.* at p. 1121.) As such, *Frost* failed to provide Edison with the prerequisite notice of Gularte's claims, which *Jolly* held was critical to apply class action tolling under *American Pipe*.

Both of *Jolly*'s policy considerations also weigh against applying class action tolling here.

On the first policy consideration—whether applying class action tolling would protect the class action device—we find it would not. In assessing this first consideration, we are to determine whether declining to apply class action tolling would induce individuals to file protective motions in the event class certification was denied for "subtle" factors unforeseeable by potential class members. (*Jolly*, *supra*, 44 Cal.3d at p. 1121.) We must also determine whether the claims asserted on behalf of the class are sufficiently like those of absent class members such that they would postpone filing individual lawsuits. (See *id*. at p. 1125.)

Neither of those underlying factors support the conclusion that applying class action tolling to Gularte's complaint would protect the class action device.

First, declining to apply class action tolling would not induce potential class members to file protective motions to intervene in the event class certification was denied for "subtle" factors. (See *Jolly*, *supra*, 44 Cal.3d at p. 1121.) Plaintiff has cited no cases (and we are aware of none) where class treatment was appropriate after a mass accident that resulted in widely varied property damage, like the wildfire case at bar. (See *Hildebrandt v. Staples the Office Superstore, LLC* (2020) 58 Cal.App.5th 128, 144 (*Hildebrandt*) [finding failure to apply class action tolling to an individual's employment misclassification claim would induce potential class members to file protective motions to intervene because misclassification claims were often suitable for class treatment].) Indeed, in the only published wildfire case cited by the parties, the court found denial of class certification was foreseeable because many purported class members opposed class certification, arguing the

11

class definition was flawed, individual questions predominated over common ones, and that individual actions were superior to class treatment.  (*Perkin v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 492, 508 (*Perkin*).)

Second, even though Gularte and the *Frost* plaintiffs alleged some of the same causes of action, that does not necessarily mean the claims asserted on behalf of the *Frost* class are sufficiently similar such that Gularte could reasonably postpone filing his individual suit.  Mass-tort actions are generally not appropriate for class certification because proof of major elements will vary widely from claim to claim.  (See *Jolly*, *supra*, 44 Cal.3d at p. 1123.)  Thus, even though the trial court has yet to determine whether class certification is appropriate in *Frost*, it was not reasonable for Gularte to postpone his suit.  As *Jolly* expressly warned, mass-tort actions may be presumptively incapable of putting a defendant on notice of an individual's untimely claims, and an individual plaintiff should presume that lack of commonality will defeat certification and preclude application of *American Pipe*.  (*Id.* at pp. 1121, 1125.)  We also note that the Thomas Fire cases have been coordinated into a single proceeding, which *Jolly* recognized as an alternative means to achieve some of the benefits of the class action device.  (*Id.* at p. 1125, fn. 19.)

As to the second policy consideration—whether applying class action tolling is consistent with and would effectuate the purpose of statutes of limitations—we conclude it would not.  As stated previously, *Frost*'s class definition is so broad and the injuries so varied that the complaint could not sufficiently notify Edison of the substantive claims being brought against it or of the number and generic identities of the potential plaintiffs who

12

could participate in the judgment.  (*Jolly*, *supra*, 44 Cal.3d at p. 1121.)  Indeed, the class definition includes any individual or entity in California that had some connection to Santa Barbara and Ventura Counties at the time of the Thomas Fire.  Likewise, the categories of damages range from any type of property, economic, or evacuation-related damages that included any lost income, earnings, or profits.  Given the broad class definition and damages categories, the number of potential plaintiffs is exceptionally expansive.  Accordingly, we find that *Frost* failed to sufficiently notify Edison of Gularte's individual causes of action, and applying class action tolling would be inconsistent with the purpose of the statute of limitations.

Our conclusion is consistent with case authority cited by both parties.

We find *Perkin*, *supra*, 225 Cal.App.4th 492, particularly instructive.  Like the instant case, *Perkin* involved individual plaintiffs suing a utility company for causing a massive wildfire that burned hundreds of thousands of acres and destroyed over 1,000 homes.  (*Id.* at pp. 494–495.)  The individual plaintiffs filed their complaint after the statute of limitations had run and argued that the filing of a prior class action tolled their claims under *American Pipe*.  (*Perkin,* at p. 498.)  The class definitions consisted of all persons and entities in California whose property had been destroyed or damaged by various wildfires.  (*Ibid*.)  *Perkin* found this broad class definition alone was sufficient to deny the application of *American Pipe*.  (*Perkin*, at p. 508.)  As mentioned above, *Perkin* also found that applying class action tolling would not protect the class action because the trial court did not deny class certification for " 'subtle factors' " unforeseeable by class members, as many purported class

13

members argued against class certification with over 1,400 plaintiffs filing individual suits against the utility company for damages caused by the wildfire.  (*Ibid.*)  We find no reason to depart from *Perkin*'s holding in the wildfire case at bar.

Gularte attempts to distinguish *Perkin*, arguing that the class definition here is narrower because it only encompasses those individual plaintiffs whose property was located within Santa Barbara and Ventura Counties.  However, like *Perkin*, the class here includes putative class members across the state.  Moreover, the *Frost* class is potentially broader than the classes in *Perkin* because it includes property damage, as well as economic and evacuation damages.

*Hildebrandt, supra*, 58 Cal.App.5th 128, is also instructive. In *Hildebrandt*, the court applied class action tolling under *American Pipe* and *Jolly* to an employee's individual misclassification and wage and hour causes of action. (*Hildebrandt*, at p. 132.)  *Hildebrandt* held that prior class actions tolled the individual plaintiff's causes of action because the individual and class action complaints both involved the employer's misclassification of the same general manager position.  (*Id*. at p. 142.)  As such, even though the class was statewide, the prior class actions sufficiently put the employer on notice of the number and generic identities of the potential plaintiffs.  (*Ibid.*)  *Hildebrandt*, at page 141, noted that the employee's misclassification claims were significantly narrower than *Perkin*'s wildfire claims, where "potential plaintiffs were not limited to a set number from a specific, clearly defined area," and could have included anyone "in California claiming that their properties were damaged in some way" by the wildfire.  Further, *Hildebrandt* found that applying class action tolling would

14

protect the class action device because it was reasonable for the individual plaintiff to rely on the class action complaint to postpone filing his own lawsuit because misclassification cases were not presumptively unsuitable for class treatment. (*Id.* at p. 144.)

Here, unlike *Hildebrandt*, it was not reasonable for Gularte to rely on *Frost* to delay filing his individual lawsuit. Gularte has not pointed to a single class action brought after a catastrophic event like the Thomas Fire, and we are aware of none, where class certification was appropriate. Indeed, in the only wildfire case cited by the parties, class certification was denied. (See *Perkin*, *supra*, 225 Cal.App.4th at p. 496.) Further, unlike *Hildebrandt*, where the employer admitted it could reasonably identify every potential class member upon the commencement of the class action, there was no way Edison could know the number and generic identities of the potential plaintiffs based on the all-encompassing class definition and damages categories in *Frost*. And, although knowledge of the exact identities of potential plaintiffs is unnecessary to apply class action tolling, *Frost* could not even notify Edison of the approximate number or generic identities of potential plaintiffs required under *American Pipe* and *Jolly*.

Gularte cites to *Becker v. McMillin Construction Co.* (1991) 226 Cal.App.3d 1493 (*Becker*) and *San Francisco Unified School District v. W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318 (*San Francisco*), to argue that class action tolling should apply here. However, both cases are distinguishable.

In *Becker*, *supra*, 226 Cal.App.3d 1493, a property developer was sued for construction defects within a 620-home development. (*Id.* at p. 1497.) The *Becker* court found the filing

15

of a prior class action regarding the same construction defects against the developer provided sufficient notice that a certain number of homeowners within the development were experiencing construction defects.  (*Id.* at p. 1501.)  Therefore, *Becker* held the class action tolled the causes of action of the individual plaintiffs who sued the developer after the statute of limitations had ran.  (*Ibid.*)  Given that the construction defects were limited to a single development, *Becker* found that the number of potential claimants was ascertainable to a significant degree, and the generic identities of potential plaintiffs were "obvious."  (*Ibid.*)  Notably, *Becker* warned against a "too-liberal interpretation of the rule set out in *American Pipe*," and that the class action at issue was "unusual" in that the potential plaintiffs were finite and could be located through their residence in the development.  (*Id.* at p. 1502.)

In *San Francisco, supra,* 37 Cal.App.4th 1318, a construction company was sued for using asbestos-containing products in its construction of school buildings.  (*Id.* at p. 1323.)  Plaintiff opted out of a class action and filed an individual lawsuit after the limitations period had expired.  (*Id.* at pp. 1323–1324, 1336.)  Like *Becker*, the *San Francisco* court found that class action tolling applied because the construction company was fairly on notice of the plaintiff's claims as the prior class action raised the same claims, and the class members could be identified through public contracts.  (*Id.* at p. 1339.)

Gularte argues this case is like *Becker* and *San Francisco* because *Frost* notified Edison that certain property owners in Santa Barbara and Ventura Counties had experienced property damage.  Again, Gularte mischaracterizes and narrows the scope of the *Frost* complaint.  As pleaded, the *Frost* complaint's class

16

definition is virtually unlimited to any individual or entity in California that suffered any property, economic, or evacuation-related damages directly or indirectly caused by the Thomas Fire, which burned hundreds of thousands of acres in two counties, and had a devastating rippling effect that went far beyond the geographic area directly affected by the fire. Unlike *Becker* and *San Francisco*, there is no means for Edison to reasonably identify all or even approximate the number of potential plaintiffs. *Becker* and *San Francisco* are not analogous and do not support the application of class action tolling here.

For the above reasons, we conclude that Gularte's causes of action were not tolled by *Frost* and were thus time-barred.

## IV. The trial court did not abuse its discretion in denying leave to amend

Finally, we find the trial court did not abuse its discretion in denying Gularte leave to amend. We note that Gularte provided some additional details in his appellate briefs as to the damages he suffered from the Thomas Fire, stating his ranch in Ventura County was damaged and needed to be evacuated. However, even if Gularte added these allegations to his complaint, they would be insufficient to warrant application of class action tolling. This is because it is not necessarily Gularte's complaint that is deficient, but the *Frost* complaint's failure to put Edison on notice of Gularte's individual causes of action. (See *Jolly*, *supra*, 44. Cal.3d at p. 1124 [finding deficiency in class action complaint alone was sufficient to deny plaintiff relief under *American Pipe*].) Simply put, there is no reasonable probability that Gularte could cure this fatal defect with amended allegations. (*Friedland v. City of Long Beach*, *supra*,

62 Cal.App.4th at pp. 841–842.)  Therefore, we find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


                                        VIRAMONTES, J.

WE CONCUR:



STRATTON, P. J.



GILBERT, J.*

---

*       Presiding Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.