[No. D010109. Fourth Dist., Div. One. Jan. 22, 1991.]

ARTHUR BECKER et al., Plaintiffs and Respondents, v. McMILLIN CONSTRUCTION COMPANY, INC., Defendant and Appellant.

## COUNSEL

Edwards, White & Sooy, Charles R. Bongard and John A. Simpson for Defendant and Appellant.

Duke, Gerstel, Shearer & Bregante, Stephen V. Rupp and Dawn R. Brennan for Plaintiffs and Respondents.

## OPINION

**HUFFMAN, J.**—McMillin Construction Company, Inc., (McMillin) appeals the judgment entered on a general verdict in favor of Arthur and Mary Becker (Becker) after the trial court denied McMillin's motion for separate trial on a statute of limitations defense (Code Civ. Proc., §§ 597, 337.15).[1] The trial judge found the applicable limitations period, 10 years, had been tolled by the pendency of a related class action, so that Becker's individual action was timely filed. We affirm, concluding the trial court correctly applied class action tolling rules summarized in *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923].

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

## Factual and Procedural Background

In 1980, Becker purchased a four-year-old single-family home in a six hundred twenty home development built by McMillin.[2] Many homes in the development have been plagued with construction defects stemming from soil subsidence and other causes. By January 1984 Becker noticed a crack in the garage floor slab and reported it to McMillin's warranty division.

One of Becker's fellow homeowners in the development, Castro, filed a construction defect action for damages September 7, 1984, alleging both individual and class claims on theories of breach of implied warranty, strict liability, and negligence. (Francisco N. Castro et al. v. McMillin Construction Company, Inc., et al. (Super. Ct. San Diego County, 1984, No. 527331).) Defective slabs, soil compaction, roofs, and common areas were alleged. Castro sued the development's homeowner's association as a defendant, naming it as an unwilling plaintiff which had refused to assert Castro's claims on request. (§ 382.) The complaint was amended several times, and notice of the pending class action was given to homeowners in the development. On January 30, 1987, Becker filed this individual action for damages based on theories of strict liability and negligence.[3]

On February 11, 1987, the parties brought a number of motions in the Castro case. Castro sought certification of a class of homeowners and, in case the class certification motion was denied, alternatively moved to file a third amended complaint naming Becker and the owners of 74 other homes as individual plaintiffs. The trial court denied certification of the class, finding the causation and damages variables among the different homes were great enough so there was a lack of common questions of law and fact. In making its ruling, the court noted the evidence showed some five or six potential causes of the construction defects: the grading plan, grading activity and inspection, drainage engineering, cut and fill problems, and expansive soil problems, as well as the presence of ancient landslide areas. Several different kinds of damages were projected: repair costs, loss of use, and stigma damages affecting the resale value of the homes. Because of these factors, the court concluded it would be more appropriate to treat the various homeowners' claims individually, possibly consolidated for trial into groups according to the type of problem at the site. The court then deemed filed the third amended complaint which named the putative class

---

[2] The notice of completion on Becker's home was recorded December 14, 1976.

[3] The record on appeal contains some documents from the Castro action, due to consolidation of Becker's portion of the Castro suit with Becker's individual action. (See p. 1497, *post*.) We have taken judicial notice of the superior court files pursuant to Evidence Code, sections 452, subdivision (d), and 459, subdivision (a).

members, including Becker, as individual plaintiffs, and struck the class action claims.

Becker's homeowner's insurer, Allstate, settled Becker's insurance claim for $82,797 and proceeded in Becker's individual action against McMillin as an intervener on a subrogation basis. Becker's claims raised in the Castro action were severed and consolidated with the individual Becker action in July 1988. Trial was set for October 1988.

At the outset of trial, McMillin raised a statute of limitations defense, claiming the 10-year latent deficiency construction defect statute (§ 337.15) had run on December 14, 1986, the 10-year anniversary of the notice of completion on the property. McMillin thus argued the Becker individual action filed January 30, 1987, was untimely, as was the February 11, 1987, amendment adding Becker as an individual plaintiff in the Castro action. McMillin contended Becker was not entitled to the benefit of the rule which tolls a limitations period (such as one that applies to intervention or to filing an individual action) during that time in which a class action, of which the plaintiff is a potential member, is awaiting certification which is ultimately denied. (*American Pipe & Construction Co.* v. *Utah* (1974) 414 U.S. 538 [38 L.Ed.2d 713, 94 S.Ct. 756]; *Crown, Cork & Seal Co.* v. *Parker* (1983) 462 U.S. 345 [76 L.Ed.2d 628, 103 S.Ct. 2392].) McMillin argued the rule of *American Pipe, supra*, 414 U.S. 538 was not controlling, since in that case the class certification was denied for lack of numerosity, while the Castro certification had been denied for lack of common questions of law and fact. McMillin relied on *Jolly* v. *Eli Lilly & Co., supra*, 44 Cal.3d 1103, where no tolling was allowed and where the denial of class certification had been made on the basis of lack of commonality.

At the hearing, the trial court discussed the applicable authority with counsel, in particular *Bangert* v. *Narmco Materials, Inc.* (1984) 163 Cal.App.3d 207 [209 Cal.Rptr. 438], which followed *American Pipe (supra*, 414 U.S. 538) and was analyzed and disapproved in part by *Jolly (supra*, 44 Cal.3d at p. 1126, fn. 20). The court then ruled the circumstances of this case (i.e., Castro's filing the class action and notifying McMillin of the number, general identity, and claims of the potential plaintiffs) justified application of the tolling doctrine to Becker in order to protect the purposes of the statute of limitations. The court did not believe *Jolly, supra*, 44 Cal.3d 1103, was controlling and denied the motion for separate trial on the limitations issue.

Jury trial commenced and on November 10, 1988, Becker obtained a verdict of $65,250. The amount of Allstate's subrogation claim, $82,797,

was offset against the verdict, resulting in a zero judgment. Becker was awarded costs after judgment. McMillin appeals.[4]

## Discussion

The single issue before us is whether Becker, because of the pendency of the Castro class certification proceedings, is entitled to claim the benefit of the tolling rule created by *American Pipe, supra*, 414 U.S. 538, and limited in *Jolly, supra*, 44 Cal.3d 1103. Resolution of this issue requires analysis of the purpose of the rule and the facts of the *Jolly* decision. We shall conclude tolling was proper and Becker's action was timely.

 In *Jolly, supra*, 44 Cal.3d 1103, 1119, our Supreme Court summarized the holding of *American Pipe, supra*, 414 U.S. 538:

"[U]nder limited circumstances, if class certification is denied, the statute of limitations is tolled from the time of commencement of the suit to the time of denial of certification for all purported members of the class who either make timely motions to intervene in the surviving individual action, . . . or who timely file their individual actions [citation]."

In *Jolly, supra*, 44 Cal.3d at pages 1121-1122, the court outlined two major policy considerations which the tolling rule was designed to accommodate: first, protection of efficiency and economy in litigation as promoted by the class action device, so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified; and second, effectuation of the purpose of the statute of limitations to protect a defendant from unfair claims. On the subject of the statute of limitations, the high court in *American Pipe, supra*, 414 U.S. 538, 554-555 [38 L.Ed.2d at p. 727] explained:

" 'The policies of ensuring essential fairness to defendants and of barring a plaintiff who has "slept on his rights," . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.' [Citation.]" (*Jolly, supra*, 44 Cal.3d at p. 1121.)

In *American Pipe, supra*, 414 U.S. 538, the court was dealing with an action in which class certification had been denied for lack of a sufficiently

---

[4]McMillin is sufficiently aggrieved by this judgment to have standing to appeal. (§ 902; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 142, pp. 151-152.)

numerous group of class members. In *Bangert* v. *Narmco Materials, Inc.*, *supra*, 163 Cal.App.3d 207, the situation was different. Bangert sought to have certified a class of persons living within a certain distance of an industrial plant that was allegedly causing them personal injury and property damage; however, certification was denied for lack of common questions of law and fact. The Court of Appeal held the individual claimants should be allowed leave to join Bangert's action by way of an amended complaint, because the *American Pipe* tolling rule protected them from the running of the usual limitations period for their actions. (*Id.* at pp. 212-213.)[5]

In *Jolly*, *supra*, 44 Cal.3d 1103, 1120, our Supreme Court characterized the *Bangert* (*supra*, 163 Cal.App.3d 207) holding as an extension of the *American Pipe* reasoning: not only denials of certification for lack of numerosity could lead to tolling, but also, after *Bangert*, denials for lack of an adequate community of interest could serve to toll the statute. To analyze the correctness of that extension, the *Jolly* discussion looked at the *American Pipe* rationale and went on to compare the nature of the class action suit on which Ms. Jolly relied to create tolling (*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061] [alleging the synthetic drug estrogen diethylstilbestrol (DES) had caused injury]) to the nature of Ms. Jolly's action. In comparing the two actions, the court found inadequate notice to the defendants had been given in the earlier action and disallowed tolling. The discrepancies between the nature of the relief sought in *Sindell* and *Jolly* (declaratory relief and damages, respectively) and the factual and legal issues in the two actions (causation of injury and damages) were too great for any notice to be presumed. Considerations of protecting the class action device gave way to the stronger consideration under the circumstances: protecting the defendant from unfair claims.

Most of the Supreme Court's discussion in *Jolly*, *supra*, 44 Cal.3d 1103, of the rationale in *American Pipe*, *supra*, 414 U.S. 538, focused on this requirement in the tolling doctrine, adequate notice to the defendant. The court pointed out a potential danger of abuse of the "generous" [*Crown, Cork & Seal Co.*, *supra*, 462 U.S. 345, 354 [76 L.Ed.2d at pp. 636-637] (Powell, J., conc.)] rule of *American Pipe*: Class actions might be filed merely to evade limitations periods. (*Jolly*, *supra*, 44 Cal.3d at p. 1124.) To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence. (*Ibid.*)

---

[5] It should be noted the procedural context in *Bangert* (a single action which the individual plaintiffs sought to join by way of an amended pleading after class certification was denied) differs from the successive action procedural history of both *American Pipe* and *Jolly*. However, the same policies apply. Both procedural methods were used in Becker's case.

The court in *Jolly, supra*, 44 Cal.3d at page 1125, then issued a warning: in the application of the *American Pipe* rule to personal injury mass tort cases, the presumption should be that "lack of commonality will defeat certification and preclude application of the *American Pipe* tolling doctrine." (*Jolly, supra*, 44 Cal.3d at p. 1125.) In a footnote dealing with alternative procedures, the court further commented, " . . . we believe class actions can rarely be appropriate for resolution of mass tort claims . . . ." (*Id.* at p. 1125, fn. 19.) However, the court declined to decide the general issue of "whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately is denied certification for lack of commonality." (*Id.* at p. 1125.) Therefore, the decision concluded on a very specific note:

"[W]e find that plaintiff and other similarly situated plaintiffs seeking personal injury damages in DES cases may not rely on the *Sindell* class action suit [citation] to toll the statute of limitations pursuant to *American Pipe*." (*Jolly, supra*, 44 Cal.3d at p. 1126.)

Accompanying this narrow holding was the footnote: "*Insofar as Bangert v. Narmco Materials, Inc.* [citation] *is inconsistent with our holding*, that case is disapproved." (*Jolly, supra*, 44 Cal.3d at p. 1126, fn. 20, italics added.) Because in our case the class certification was denied for the same reason as in *Bangert* (lack of commonality), we must determine the extent to which *Bangert* is no longer good law. This requires us to address the question of whether the property damage mass tort claims in this case have any different features from personal injury mass tort claims which would justify a different treatment than *Jolly* permits.

Turning to the validity of *Bangert, supra*, 163 Cal.App.3d 207, we note it involved a proposed class claim for both personal injury and property damage allegedly incurred over a 31-year period. As to the personal injury claim, it is clear that *Jolly* controls: the same causation and damages variables as to various plaintiffs' medical histories and injuries make a finding of "common questions of law and fact" impossible, and the giving of any meaningful notice of the substantive claims to defendants doubtful. (See *Jolly, supra*, 44 Cal.3d at p. 1123.) Similarly, it would be difficult for the defendant to identify the " 'number and generic identities' " (*id.* at p. 1121) of potential plaintiffs who had moved in and out of the area in the past 31 years. Thus, any application of the tolling doctrine would be inequitable.

As to the property damage claims in *Bangert, supra*, 163 Cal.App.3d 207, lack of commonality for class certification purposes is equally clear, because of the causation and damage variables such as distance from the subject

industrial plant, changes in the plant's output over time, etc. However, there is a distinction as to the existence of notice: the affected property and property owners are more readily identifiable as to number and generic identity, making it more reasonable to expect a defendant to be put on some degree of notice of the extent of the claim by the pending class action.

To this extent, it seems to us, *Bangert* (*supra*, 163 Cal.App.3d 207) has not been disapproved. We find it is possible for some prior class actions based on tort, particularly property damage cases, to provide adequate notice to a defendant so that tolling is proper, even where class certification had to be denied for lack of common questions. The narrow language of the actual holding in *Jolly* (*supra*, 44 Cal.3d 1103) indicates the Supreme Court was working cautiously in this complex area and left open the possibility of applying the tolling doctrine even in mass tort cases in which a lack of commonality had been found, if the circumstances so required. The "presumption" suggested against tolling was not a conclusive one. (*Jolly*, *supra*, 44 Cal.3d at p. 1125.)

■ Here, we agree with the trial court the equities demand that tolling be permitted. Even though there was clearly a lack of commonality for class certification purposes, the substantive class and individual claims were sufficiently similar to give McMillin notice of the litigation for purposes of applying the tolling rule. First, on the issue of the "number and generic identities of the potential plaintiffs" (*American Pipe*, *supra*, 414 U.S. at p. 555 [38 L.Ed.2d at p. 727]), the filing of the Castro action on construction defect theories must reasonably be said to have put McMillin on notice that a certain number of homeowners in this specific subdivision were experiencing construction defects which might well lead to extended litigation, whether in a class forum or in individual actions.[6] The identity and number of potential claimants were thus ascertainable to a significant degree that was adequate to give the required notice of the addresses potentially involved in the action. Some turnover in home ownership was inevitable, which later discovery could reveal, but it cannot be disputed the "generic identity" of plaintiffs was obvious.

With respect to the issue of the nature of the substantive claims, the Castro action gave McMillin notice that construction defects were claimed by some homeowners at the site. It was then "aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class." (*Crown, Cork & Seal Co.* v. *Parker*, *supra*, 462 U.S. at p. 353 [76

---

[6] Class actions in the construction defect context are not commonly used, in part because of the provisions of section 374, granting homeowners associations standing to sue on these theories. However, class action procedure has been used for some such property damage claims. (Miller, Cal. Construction Defect and Land Subsidence Litigation (1986) § 4.7, at p. 43.)

L.Ed.2d at p. 635].) An experienced developer such as McMillin can be expected to have general familiarity with the nature of latent deficiency construction defect claims that might be brought against it, such as Castro and Becker each raised. Litigation of the substantive claims would, of course, require individualized attention to causation and degree of damage at the properties; this problem was serious enough to defeat the class certification request. However, such problems are not fatal to the existence of an adequate degree of notice to the defendant for purposes of applying the tolling rule in the property damage context. Variations in proof of causation and damage are not as extreme for this type of property damage as for personal injury mass tort cases, where the injured plaintiffs' personal backgrounds and medical histories are unique. Rules regarding notice should accordingly be less stringent for this type of property damage where tolling is concerned.

Therefore, our evaluation of the significant factors identified in *Jolly, supra*, 44 Cal.3d 1103, to be considered in applying the tolling doctrine leads us to conclude the application of the rule is a fair one here. ▆ Moreover, we can think of no convincing reason to accord the 10-year latent deficiency statute of limitations (§ 337.15) more protection than has been allowed any other limitations period for bringing an action. The mere fact it is longer than other limitations periods and was intended by the Legislature to protect developers from liability extending indefinitely into the future (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398 [163 Cal.Rptr. 711]) is no reason to discard the application of well-established equitable principles of tolling where otherwise appropriate.

Finally, we add our voice to those of other courts which have warned against a too-liberal interpretation of the rule set out in *American Pipe, supra*, 414 U.S. 538. It must be emphasized that in some ways this was an unusual class action effort which, as revealed in the pleadings, apparently came about when the homeowners association in the development declined to take action against the developer at the request of a few homeowners. (See fn. 6, *ante.*) Thus, our decision should not be broadly construed to apply to any and all construction defect cases. Here, however, both the Castro action and Becker's individual action were based on the same type of claim and the same subject matter; the class of potential plaintiffs was finite and could be located through their residences in the development. Consistent with the Supreme Court's approach in *Jolly, supra*, 44 Cal.3d 1103, the applicability of *American Pipe* can only be determined by individualized attention to the identity of the claimants and the nature of the claims involved, and by a careful weighing of the important policy considerations in this area. We conclude the trial court's resolution of these factors was correct.

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Froehlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 18, 1991. Panelli, J., was of the opinion that the petition should be granted.