Filed 12/4/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VON HILDEBRANDT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> STAPLES THE OFFICE SUPERSTORE, LLC, <br><br> Defendant and Respondent. | B294642 <br><br> Los Angeles County <br> Super. Ct. No. BC666236 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Reversed in part, affirmed in part.

Schneider Wallace Cottrell Konecky & Wotkyns, Todd M. Schneider, Carolyn H. Cottrell and David C. Leimbach; Boucher, Raymond P. Boucher, Maria L. Weitz, Neil M. Larsen and Alexander Gamez for Plaintiff and Appellant.

Morrison & Foerster, Miriam A. Vogel, Tritia M. Murata, David P. Zins and Karen J. Kubin for Defendant and Respondent.

Plaintiff Von Hildebrandt appeals a summary judgment entered in favor of defendant Staples the Office Superstore, LLC (Staples).  The trial court determined all of Hildebrandt's claims were barred by the applicable statutes of limitations and the pendency of related class actions did not toll the limitations periods.  We conclude the trial court erred in applying the class action tolling rules articulated in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (*Jolly*).

Because Hildebrandt concedes his claim for failure to furnish accurate itemized wage statements (see Lab. Code, § 226) is time barred, even if tolling applies, we will affirm the summary adjudication of that claim.[1]  In all other respects the summary judgment is reversed.

## FACTS AND PROCEDURAL BACKGROUND

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." '  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

---

[1]     Staples separately moved for summary adjudication of each claim.

1. ***The Parties***

Staples is a global provider of office products and services. Its Superstores are big-box retail stores catering to individual customers and business clients. By mid-2018, Staples operated more than 160 Superstores across California. The general manager is the highest-level manager in a Superstore and the only manager that Staples classifies as exempt from overtime pay and meal and rest break requirements. General managers are responsible for managing every aspect of a store's operation.

Hildebrandt worked as a salaried general manager for Staples from April 24, 2000 to June 20, 2013. During his employment, Hildebrandt worked at several Staples locations in California.

2. ***The*** Hatgis ***and*** Wesson ***Putative Class Actions***

On March 11, 2014, Dianne Hatgis, a former Staples Copy and Print Shop general manger, filed a putative class action on behalf of all people employed as general managers at Staples "retail locations" in California. Hatgis asserted claims on behalf of herself and the putative class members for (1) failure to pay overtime compensation (Lab. Code, § 510); (2) failure to authorize and permit rest periods (*id*., § 226.7); (3) failure to provide meal periods (*id*., §§ 226.7 & 512); (4) failure to furnish accurate itemized wage statements (*id*., § 226); (5) failure to timely pay wages upon termination or resignation (*id*., §§ 201–203); and (6) violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200). Hatgis premised her claims on the allegation that Staples misclassified its general managers as exempt employees.

On July 6, 2015, the trial court in the *Hatgis* action granted Staples's motion to limit the putative class to Staples Copy and

Print Shop general managers only. On October 23, 2015, Hatgis voluntarily dismissed her class claims without prejudice.

On September 4, 2015, Fred Wesson, a Staples general manager, filed a putative class action against Staples on behalf of all current and former general managers at Staples Superstore retail locations in California who were employed on or after May 10, 2010. Like Hatgis, Wesson asserted causes of action for (1) failure to pay overtime compensation; (2) failure to authorize and permit rest periods; (3) failure to provide meal periods; (4) failure to furnish accurate itemized wage statements; and (5) violation of the UCL. He alleged Staples misclassified its Superstore general managers as exempt employees to avoid paying overtime compensation and to avoid providing meal and rest breaks.

On April 17, 2017, the trial court denied Wesson's motion for class certification, concluding Wesson failed to show that the class claims were susceptible to common proof and that proceeding as a class action would be superior to other methods of adjudication.[2] The court determined the "great variation in how Staples store general managers perform their jobs and the extent to which they perform nonexempt tasks" would require "highly individualized determinations" regarding each general manager's exempt status.

---

[2] Hildebrandt was one of several general managers who submitted declarations in support of Wesson's class certification motion. In his declaration, Hildebrandt detailed his job duties and asserted he spent more than 70 percent of his workday performing "the same tasks as hourly employees."

4

### 3.    *Hildebrandt's Lawsuit*

On June 22, 2017, Hildebrandt filed this action against Staples, asserting the same causes of action that Hatgis and Wesson had pled on behalf of their respective putative classes. Specifically, Hildebrandt's complaint asserts claims for (1) failure to pay overtime compensation; (2) failure to authorize and permit rest periods; (3) failure to provide meal periods; (4) failure to furnish accurate itemized wage statements; (5) failure to pay all wages upon termination; and (6) violation of the UCL. Like the *Hatgis* and *Wesson* complaints, Hildebrandt alleges Staples misclassified him and other general managers as exempt employees to avoid paying overtime compensation and providing meal and rest breaks.  The complaint asserts the applicable statutes of limitations were tolled during the pendency of the *Hatgis* and *Wesson* class certification proceedings.

### 4.    *Staples's Motion for Summary Judgment*

Staples moved for summary judgment, arguing Hildebrandt's claims were barred by the applicable statutes of limitations.  Staples's supporting evidence established that Hildebrandt's employment ended on June 20, 2013 and that he did not file his lawsuit until June 22, 2017—outside the longest limitations period of four years.

Regarding tolling, Staples argued the *Hatgis* action could not have tolled the statutes of limitations on Hildebrandt's claims because Hatgis was a Staples Copy and Print Shop general manger—not a Superstore general manager like Hildebrandt. As for the *Wesson* action, Staples argued the denial of class certification for lack of commonality in *Wesson* raised a "presumption" against tolling.  Staples maintained Hildebrandt could not overcome the presumption because, when the *Wesson*

action was filed, Staples had "no way of predicting" which Superstore general managers "would believe themselves to have been deprived of overtime pay and decide to sue." Staples also argued the denial of class certification in *Wesson* could not have been " 'unforeseeable' " to Hildebrandt, since misclassification claims frequently depend on how individual employees perform their jobs.

In his opposition, Hildebrandt acknowledged his claims would be time barred without tolling. However, he argued application of the class action tolling doctrine was necessary to protect the efficiency and economy of the class action device; otherwise putative class members would be induced to file individual actions to avoid the statute of limitations bar, even while class certification proceedings were still pending. And, because his claims were "nearly identical" to those asserted on behalf of the classes in *Hatgis* and *Wesson*, Hildebrandt argued those putative class actions put Staples on notice of the substantive claims and generic identities of potential plaintiffs like him during the applicable limitations periods.

**5.** ***The Order Granting Summary Judgment***

The trial court granted Staples's motion for summary judgment, concluding Hildebrandt's claims were barred by the applicable statutes of limitations and class action tolling did not apply. Relying on *Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440 (*Batze*), the court determined the denial of class certification in *Wesson* due to lack of commonality gave rise to a "presumption" against tolling. And the court concluded Hildebrandt could not overcome that presumption, as a matter of law, because the evidence showed tolling would be "prejudicial"

6

to Staples and the denial of class certification was not "unforeseeable."

Regarding prejudice to Staples, the trial court reasoned the "discrepancies between the claims of the members of the putative class were 'too great for the [*Wesson* or *Hatgis*] action to have put [Staples] on notice that it needed to preserve evidence with respect to every one of its [Superstore general managers].' " Staples, the court determined, had "no way of predicting which of its Superstore [general managers], including potentially Hildebrandt, managing dissimilar stores at over hundreds of locations statewide[,] would believe they too were misclassified." And the court found it would have been " 'unrealistic to expect that the filing of the [*Wesson* or *Hatgis*] action[ ] would have prompted [Staples] to maintain all employment records relating to every [Superstore general manager] or to gather evidence and witness statements pertaining to every [Superstore general manager].' "

The trial court also found "Hildebrandt fail[ed] to show denial of class certification was unforeseeable." In support of the finding, the court noted "Hildebrandt was in communication with counsel in *Wesson*, who is now Hildebrandt's counsel, and in *Wesson* class certification was vigorously contested which reflects denial of class certification was not unforeseeable."

The trial court entered judgment for Staples. Hildebrandt filed a timely notice of appeal.

## DISCUSSION

### 1.   *Standard of Review*

On appeal from a summary adjudication, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections

7

have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary adjudication upon a showing that a plaintiff's cause of action has no merit. (Code Civ. Proc., § 437c, subds. (a) & (f)(1).) The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action. (*Id.*, subd. (p)(2); *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)

**2.      *The* American Pipe *Tolling Rule as Adopted in* Jolly**

This appeal presents one issue: Was Hildebrandt entitled, due to the pendency of the *Wesson* and *Hatgis* class certification proceedings, to claim the benefit of the class action tolling rule established by the United States Supreme Court in *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 (*American Pipe*), as adopted by our Supreme Court in *Jolly, supra,* 44 Cal.3d 1103? We conclude he was.

In *Jolly*, our Supreme Court summarized the holding of *American Pipe* as follows: "[U]nder limited circumstances, if class certification is denied, the statute of limitations is tolled

8

from the time of commencement of the suit to the time of denial of certification for all purported members of the class who either make timely motions to intervene in the surviving individual action [citation], or who timely file their individual actions." (*Jolly, supra,* 44 Cal.3d at p. 1119.)

The *Jolly* court identified "two major policy considerations" underlying the *American Pipe* tolling rule: (1) protection of the class action device; and (2) effectuation of the purpose of the statute of limitations. (*Jolly, supra,* 44 Cal.3d at p. 1121.) According to our high court, "[t]he question to be asked" in determining whether tolling should apply to an absent class member's individual claims "is whether [the former] class action fits the rationale of *American Pipe, supra,* 414 U.S. 538." (*Ibid.*)

Regarding the first consideration, the *Jolly* court explained: "In cases where class certification is denied for what the [*American Pipe* court] characterized as 'subtle factors,' unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to 'file protective motions to intervene or to join in the event that a class was later found unsuitable,' depriving class actions 'of the efficiency and economy of litigation which is a principal purpose of the procedure.' " (*Jolly, supra,* 44 Cal.3d at p. 1121, quoting *American Pipe, supra,* 414 U.S. at p. 553; see also *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345, 350–351.) Thus, courts must determine whether tolling will "serve[ ] to further economy and efficiency of litigation, so as to justify affording plaintiff shelter under the protective umbrella of *American Pipe.*" (*Jolly,* at p. 1122.) That determination will often depend on whether the claims asserted on behalf of the putative class were

9

sufficiently similar to the absent class members' individual claims, so that the absent class members can be found "reasonably [to] have relied on the [class action] complaint as a basis for postponing their own" actions.  (*Id.* at p. 1125.)

As for the second consideration, the *Jolly* court reaffirmed that statutes of limitations promote the " 'policies of ensuring essential fairness to defendants and of barring a plaintiff who has "slept on his rights" ' " from bringing a stale claim.  (*Jolly, supra,* 44 Cal.3d at p. 1121, quoting *American Pipe, supra,* 414 U.S. at p. 554.)  Our high court explained these policies " 'are satisfied when . . . a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.' " (*Jolly,* at p. 1121, quoting *American Pipe,* at pp. 554–555.)  Adequate notice to the defendant is key to ensuring fair application of the tolling rule.  In that regard, the *Jolly* court emphasized the importance of avoiding a particular abuse that would arise if plaintiffs were " 'free to raise different or peripheral claims following denial of class status,' " and admonished trial courts to " 'take care to ensure that the [subsequent] suit raises claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," so that "the defendant will not be prejudiced." ' " (*Jolly,* at p. 1124; see also *id.* at p. 1125 [instructing lower courts to "exercise discretion in applying the *American Pipe* rule in order to 'prevent the type of abuse mentioned above and [to] preserve a defendant whole against prejudice arising from claims for which he has received no prior notice.' "].)

In *Jolly*, application of the tolling rule satisfied neither underlying policy consideration of *American Pipe*. (*Jolly, supra,* 44 Cal.3d at p. 1122.)  The original class action had been filed by Judith Sindell, who sued "on her own behalf and, 'with respect to certain relief,' on behalf of a class of women allegedly similarly situated." (*Id.* at p. 1120; see *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588 (*Sindell*).)  For herself, individually, Sindell claimed damages for personal injuries suffered due to her mother's ingestion of DES during pregnancy.[3]  (*Jolly,* at p. 1120.)  For the class, Sindell sought "only declaratory relief and an order directing defendants to publicize the dangers of DES." (*Ibid.*)  The trial court denied certification, citing "lack of commonality among class members on issues of proximate cause, extent of injury, and appropriate medical examination or treatment." (*Ibid.*)  While the certification proceedings were pending, Christine Jolly filed her individual lawsuit for personal injuries caused by her mother's prenatal ingestion of DES. (*Id.* at pp. 1107–1108.)

Relying on *American Pipe*, Jolly argued the filing of the class action in *Sindell* tolled the statute of limitations for individual putative class members until certification was denied. (*Jolly, supra,* 44 Cal.3d at p. 1118.)  Our Supreme Court rejected the argument, concluding "the *Sindell* class action complaint neither sufficiently put defendants on notice of the substance and nature of plaintiff's claims, nor served to further economy

---

[3]     DES is the synthetic drug estrogen diethylstilbestrol.  It had been prescribed for the prevention of miscarriages before its association with certain congenital diseases was discovered. (See *Jolly, supra,* 44 Cal.3d at p. 1107.)

and efficiency of litigation, so as to justify affording plaintiff shelter under the protective umbrella of *American Pipe*." (*Id., at p. 1122.*) Specifically, our high court held the "same reasons that render certification of mass-tort claims generally inappropriate render inappropriate the application and extension of *American Pipe* . . . to the present case." (*Id., at p. 1123.*)

Because Sindell had asserted different claims on behalf of the class and because the determination of whether someone suffered injury from prenatal exposure to DES implicated myriad factual issues, the *Jolly* court reasoned Sindell's class complaint did not put the defendants on notice of Jolly's substantive claims or of the generic identities of potential individual plaintiffs like Jolly. The court explained: "Because of the nature of the *Sindell* complaint—as indicated, Judith Sindell did not seek to certify the class as to personal injury claims, the gravamen of plaintiff's complaint—and the differences in issues of fact and law— plaintiff's action for damages puts into issue the prenatal treatment of her mother, the specific form of DES prescribed (e.g., tablet, capsule), the dosage taken, her mother's obstetrical history and many other issues necessarily involved in proving causation, damages and defenses—the *Sindell* class suit [citation] could not have apprised defendants of plaintiff's substantive claims. Therefore, plaintiff cannot now claim that Sindell's complaint put defendants on notice of allegations related to personal injury within the statutory period of limitation so that they might prepare their defense." (*Jolly, supra,* 44 Cal.3d at pp. 1123–1124.)

Likewise, "because the *Sindell* complaint did not seek personal injury damages on behalf of the class," the *Jolly* court reasoned "even those absent class members who were aware

of that action could not reasonably have relied on the complaint as a basis for postponing their own personal injury actions." (*Jolly, supra,* 44 Cal.3d at p. 1125.)  Thus, refusing to extend the tolling rule to Jolly's personal injury claim would "not result in duplicative litigation of the sort feared by the court in *American Pipe*, nor [would] it deprive [the class action device] of its purpose to further the efficiency and economy of litigation."  (*Ibid.*)

Having determined the discrepancy in the claims asserted on behalf of the *Sindell* putative class and in Jolly's individual complaint precluded application of the *American Pipe* tolling rule, the *Jolly* court remarked that it "need not address the broader question whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately is denied certification for lack of commonality." (*Jolly, supra,* 44 Cal.3d at p. 1125.)  Nevertheless, our Supreme Court offered an admonition for putative class members in such cases: "We observe, however, that because personal-injury mass-tort class-action claims can rarely meet the community of interest requirement in that each member's right to recover depends on facts peculiar to each particular case, such claims may be presumptively incapable of apprising defendants of 'the substantive claims being brought against them' [citation], a prerequisite, in our view, to the application of *American Pipe* [citations].  This being so, putative class members would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations.  The presumption, rather, should be to the contrary—i.e., that lack of commonality will defeat certification and preclude application of the *American Pipe* tolling doctrine."  (*Ibid.*)

13

### 3. *The Limitations Periods Were Tolled During the* **Wesson** *and* **Hatgis** *Class Certification Proceedings*

In declining to apply the tolling rule to Hildebrandt's claims, our trial court relied upon *Batze, supra,* 10 Cal.App.5th 440. Like our case, *Batze* considered whether the statute of limitations should have been tolled on claims for unpaid overtime wages brought by three assistant managers of the defendant supermarket after certification of the same unpaid wage claim on behalf of a putative class of assistant managers was denied for lack of commonality. (*Id.* at pp. 445–446, 482–484.) Our colleagues in Division Four "discern[ed] no error in the trial court's determination that the statute of limitations was not tolled," reasoning the denial of certification for lack of commonality gave rise to a presumption against tolling, and the trial court had correctly found application of the tolling rule would not satisfy the " 'two major policy considerations' " underlying *American Pipe*.[4] (*Batze,* at pp. 482–484.) As we will discuss, there are inconsistencies between the *Batze* court's reasoning and our Supreme Court's articulation of these underlying policy considerations in *Jolly*. Due to those inconsistencies, we cannot follow *Batze* in this case.

---

[4] The parties commit considerable portions of their briefing to discussing this supposed "presumption" from *Jolly*. The issue is irrelevant to our disposition of this appeal. The pertinent passage—one paragraph appearing at the end of the *Jolly* opinion—is dicta. (See *Jolly, supra,* 44 Cal.3d at p. 1125 [observing, "*In light of our disposition, we need not address* the broader question whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately

The trial court in *Batze* "found the discrepancies between the claims of the members of the putative class were 'too great for the [former class] action to have put [the defendant] on notice that it needed to preserve evidence with respect to every one of its managers and assistant managers,' that [the defendant] had no way of predicting which of the thousands of managerial employees holding multiple positions in hundreds of locations would believe themselves to have been deprived of overtime and decide to bring a suit, and that it would have been unrealistic to expect that the filing of the [former class] action would have prompted [the defendant] to maintain all employment records relating to every managerial employee or to gather evidence and witness statements pertaining to every managerial employee."

is denied certification for lack of commonality" (italics added)].) The passage is a warning *to putative class members* in "personal injury mass-tort case[s]" about what *their* "presumption" should be when considering whether to "rely" on a class action "to toll their individual statute of limitations," given that "personal-injury mass-tort class-action claims can rarely meet the community of interest requirement." (*Id.* at p. 1125 & fn. 19 [expressing view that "class actions can rarely be appropriate for resolution of mass tort claims"]; see also *Becker v. McMillin Construction Co.* (1991) 226 Cal.App.3d 1493, 1500 (*Becker*) [recognizing the "presumption" applies only to "personal injury mass tort cases"]; *Perkin v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 492, 504 (*Perkin*) [same]; cf. *Batze, supra,* 10 Cal.App.5th at p. 482 [eliding *Jolly* court's reference to mass tort claims].) We do not read this passage as a categorical directive about what *a court* must presume in assessing the major policy considerations underlying *American Pipe* in *every case* in which certification is denied for lack of commonality.

15

(*Batze, supra,* 10 Cal.App.5th at p. 483.)  The *Batze* court
concluded these were appropriate reasons to refuse tolling, noting
the "evidence presented bore out the [trial] court's conclusions."
(*Id.* at p. 484.)  Additionally, the court found the "fact that nearly
200 plaintiffs had already brought individual claims before
the class certification was denied [gave] further support to
the trial court's ruling, as it demonstrate[d] that denial of
class certification was not unforeseen."  (*Ibid.*)

　　We agree with Hildebrandt that the reasons the *Batze*
court gave for its decision—reasons adopted by our trial court
in refusing to toll the limitations periods on Hildebrandt's
claims—have no substantive foundation in *Jolly* or *American
Pipe*.  To begin, as Hildebrandt points out, nothing in *Jolly*
or *American Pipe* makes tolling dependent upon whether the
defendant had "a way of predicting" which absent class member
"would believe themselves" injured and "decide to bring a suit."
(*Batze, supra,* 10 Cal.App.5th at pp. 483–484.)  Indeed, that sort
of *factual* inquiry into what the defendant could have predicted
about what an absent class member might have believed is
plainly improper under *Jolly* and *American Pipe*, which require
the trial court to focus on the class action *pleading* to determine
whether the defendant had adequate notice sufficient to
effectuate the purpose of the statute of limitations.  (*Jolly, supra,*
44 Cal.3d at p. 1121; *American Pipe, supra,* 414 U.S. at pp. 554–
555; see also *Perkin, supra,* 225 Cal.App.4th at pp. 498–500
[trial court made improper "finding of fact" regarding defendant's
"knowledge of the boundaries" of a fire perimeter in determining
if tolling applied].)

　　In contrast to the factual inquiry embraced in *Batze*, *Jolly*
and *American Pipe* require only that the original class action

16

complaint " 'notifies the defendants . . . of the *substantive claims* being brought against them, [and] of the *number and generic identities of the potential plaintiffs* who may participate in the judgment.' " (*Jolly, supra,* 44 Cal.3d at p. 1121, quoting *American Pipe, supra,* 414 U.S. at pp. 554–555, italics added.) As long as the pleading provides this notice, there is no further requirement that the defendant also be able to predict which of the potential plaintiffs will decide to bring suit. (See *Becker, supra,* 226 Cal.App.3d at p. 1501 [where "identity and number of potential claimants [was] ascertainable to a significant degree" from original class action complaint, this "was adequate to give the required notice," even though some claimants inevitably would not bring suit]; cf. *Perkin, supra,* 225 Cal.App.4th at p. 507 [where "potential plaintiffs were not limited to a set number from a specific, clearly defined area," and could have included anyone "in California claiming that their properties were damaged in some way" by fire, class action complaint did not provide adequate notice].)

*Jolly* provides an instructive contrast to our case and to *Batze*. In *Jolly*, the defendant could not possibly have discerned from the *Sindell* complaint the number and generic identities of potential plaintiffs who might participate in the class action judgment. The complaint defined the putative class as female residents of California " 'who have been exposed to DES before birth and who . . . have or may have contracted or in the future may contract adenocarcinoma or vaginal or cervical adenosis or precancerous tumors of the breast or cancer of the bladder.' " (*Jolly, supra,* 44 Cal.3d at p. 1120.) As *Jolly* recognizes, even if the defendant could identify all pregnant women who were administered DES in California during the relevant period,

17

an individualized assessment of "the specific form of DES prescribed (e.g., tablet, capsule), the dosage taken, [each] mother's obstetrical history and many other issues necessarily involved in proving causation, damages and defenses" would be required to ascertain which of their daughters actually had a significant exposure to DES before birth and which of those women had contracted or might contract the ailments listed in *Sindell*'s class definition. (*Jolly*, at p. 1123.) No such inquiry is required here.

Unlike in *Jolly*, there is no reasonable dispute that Staples was readily able to determine the number and generic identity of all potential plaintiffs who might have participated in the *Wesson* or *Hatgis* class action judgment, and Staples could do this without an individualized assessment of intervening factors related to causation, damages, or even its affirmative defense. The *Wesson* class was defined as "[a]ll current and former employees of [Staples] employed as General Managers at Staples Superstore retail locations in California [on or after] May 10, 2010."[5] Although the trial court in *Wesson* found Staples's

---

[5] The *Hatgis* class was defined as "All persons employed by Defendants as General Managers at Staples *retail locations* in the State of California between March 11, 2014 and the date class certification is granted." (Italics added.) Staples argues *Hatgis* could not have given it notice because "*Hatgis* did not even involve Superstore [general managers], the position [Hildebrandt] held." The record is to the contrary. Although the trial court in *Hatgis* limited the class to only Staples Copy and Print Shop general managers more than a year after Hatgis filed her complaint, during the relevant tolling period, the class

18

exemption defense required individualized inquiries that precluded class certification, Staples nevertheless *admits* it could identify each and every member of the proposed class. Under *American Pipe* and *Jolly*, nothing more was required. (See *Jolly, supra,* 44 Cal.3d at p. 1121; *American Pipe, supra,* 414 U.S. at pp. 554–555.)

Notwithstanding its admission, Staples argues it "cannot be the law" that it was required to preserve evidence relevant to the claims of every Superstore general manager in California "simply because a class action was filed." The *Batze* court and our trial court likewise concluded "it would have been unrealistic to expect that the filing of the [former class] action would have prompted [the defendant] to maintain all employment records relating to every managerial employee or to gather evidence and witness statements pertaining to every managerial employee." (*Batze, supra,* 10 Cal.App.5th at pp. 483–484.) But neither *American Pipe* nor *Jolly* identified the burden of preserving evidence as a basis to refuse tolling. On the contrary, these controlling authorities were concerned with only the *prejudice* that would arise if defendants did not receive *adequate notice* of

---

definition did include Superstore general managers like Hildebrandt.

Staples also argues tolling premised on *Hatgis* is barred under *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276. But *Fierro* only held that "*American Pipe* tolling does not apply to any later *class* claims." (*Fierro,* at p. 291.) Hildebrandt argues his *individual* claims—specifically, his individual claim for failure to pay wages upon termination—were tolled during the pendency of the *Hatgis* class certification proceedings. *Fierro* is inapposite.

19

the substantive claims and generic identity of potential plaintiffs "within the statutory period of limitation so that they might prepare their defense." (*Jolly, supra,* 44 Cal.3d at pp. 1123–1124; *American Pipe, supra,* 414 U.S. at p. 562.)

Part of preparing a defense is preserving and gathering evidence relevant to a claim. As discussed, the *Wesson* and *Hatgis* complaints put Staples on notice that it faced Labor Code and UCL violation claims stemming from its blanket classification of all general managers as exempt employees and alleged failure to pay required wages. And Staples admits the class definitions allowed it to identify all the potential plaintiffs who might assert those claims within the statutory period of limitations. Staples therefore had sufficient notice to allow it to gather and preserve evidence in preparing its defense. (See *Becker, supra,* 226 Cal.App.3d at pp. 1501–1502 [where former class action made the defendant " 'aware of the need to preserve evidence and witnesses respecting the claims of *all the members of the class*,' " lack of commonality was "not fatal to the existence of an adequate degree of notice to the defendant for purposes of applying the tolling rule" (italics added)].)

While the burden placed on a defendant to preserve evidence is not a relevant consideration, the burden placed on *the courts* is. The relevant policy consideration is "protection of the class action device"—specifically, " 'the *efficiency and economy of litigation* which is a principal purpose of the procedure.' " (*Jolly, supra,* 44 Cal.3d at pp. 1121, 1125, italics added.)

When the trial court addressed this policy consideration, it concluded Hildebrandt could not have reasonably relied upon certification of the *Wesson* class because Hildebrandt was "in communication with counsel in *Wesson*" and class certification

20

was "vigorously contested."  These facts, the trial court reasoned, "reflect[ed] denial of class certification was not unforeseeable." The *Batze* court similarly found the plaintiffs could not have reasonably relied on the former class action in waiting to file their claims because "nearly 200 plaintiffs had already brought individual claims before the class certification was denied." (*Batze, supra,* 10 Cal.App.5th at p. 484.)  Neither of these reasons is consistent with the relevant policy consideration.

As Hildebrandt points out, nothing in *American Pipe* or *Jolly* suggests we should consider whether class certification was "vigorously contested" or whether absent class members "had already brought" protective individual actions in assessing whether tolling is necessary to protect the class action device. Instead, *American Pipe* and *Jolly* hold that tolling during class proceedings is necessary because, without a tolling rule, class members would be "*induce[d]*" to " 'file protective motions to intervene' " thereby "depriving class actions 'of the efficiency and economy of litigation which is a principal purpose of the procedure.' " (*Jolly, supra,* 44 Cal.3d at pp. 1121, 1125, italics added.)

Again, *Jolly* provides an instructive contrast.  In evaluating whether application of the tolling rule was necessary to protect the class action device, our Supreme Court did not focus on the individualized evidence that would be necessary to prove Jolly's claims.  Nor did our high court consider whether Jolly should have known certification of the *Sindell* class would be denied for lack of commonality.  Rather, the court's analysis turned on the difference between the *claims* asserted in the class action and in Jolly's individual action, and whether it was reasonable for Jolly to postpone bringing her action in light of that difference.  The

21

*Jolly* court explained: "[B]ecause the *Sindell* complaint *did not seek personal injury damages on behalf of the class*, even those absent class members who were aware of that action *could not reasonably have relied on the complaint as a basis for postponing their own personal injury actions.*" (*Jolly, supra,* 44 Cal.3d at p. 1125, italics added.) And, because *the claims were different*, the *Jolly* court held declining to apply the class action tolling rule would "not result in duplicative litigation of the sort feared by the court in *American Pipe*, nor [would] it deprive [the class action device] of its purpose to further the efficiency and economy of litigation." (*Ibid.*, citing *American Pipe, supra,* 414 U.S. at p. 553.)

Staples does not dispute that Hildebrandt asserted the same Labor Code and UCL violations that the *Wesson* and *Hatgis* complaints asserted on behalf of their respective putative classes. A comparison of the complaints also confirms Hildebrandt and Wesson based their claims on the same underlying allegation that Staples misclassified its general managers as exempt employees despite requiring them to spend over 50 percent of their working hours performing duties delegated to non-exempt employees. Likewise, Hildebrandt asserted the same claim for failure to pay wages upon termination that Hatgis asserted on behalf of the putative class in her case. And, unlike mass tort personal injury claims, these misclassification and unpaid wage claims are not presumptively unsuitable for class treatment. (Cf. *Jolly, supra,* 44 Cal.3d at p. 1126, fn. 19 ["class actions can rarely be appropriate for resolution of mass tort claims"]; *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 37–38 ["A class action trial may determine that an employer is liable to an entire class for misclassification if it is shown that the employer had a

consistently applied policy or uniform job requirements."];
*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th
362, 380 [misclassification claim seeking unpaid overtime wages
on behalf of managerial employees of restaurant chain was
amenable to common proof where "parties ha[d] identified a finite
task list, suggesting that jobs . . . were 'highly standardized' "];
*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1301
[common legal and factual issues predominated misclassification
claims for unpaid overtime, meal and rest break violations, and
wage statement violations].)

Thus, under *Jolly*, Hildebrandt could "reasonably have
relied on the [*Wesson* and *Hatgis*] complaint[s] as a basis for
postponing" the filing of his own claims. (*Jolly, supra,* 44 Cal.3d
at p. 1125.) Were we to hold the limitations periods on these
claims were not tolled during a class certification proceeding in
which the *same claims* were asserted on behalf of Hildebrandt as
a member of the putative class, there is little doubt our holding
would induce absent class members in future misclassification
cases to file protective individual actions for fear their claims
might be time barred, thus depriving the class action of the
efficiency and economy of litigation that is its principal purpose.
(*Jolly,* at p. 1121; *American Pipe, supra,* 414 U.S. at p. 553.)

The *Wesson* and *Hatgis* complaints gave Staples adequate
notice of Hildebrandt's potential claims. There is no prejudice
to Staples. Tolling is therefore appropriate, and the statute
of limitations must give way to the stronger consideration:
protection of the class action device. (Cf. *Jolly, supra,* 44 Cal.3d
at pp. 1123–1124 [prejudice to defendant is "alone sufficient" to
deny tolling relief]; see *Becker, supra,* 226 Cal.App.3d at p. 1502
[application of tolling rule was "fair" where the defendant had

23

adequate notice of claims and generic identity of claimants, thus "equitable principles" underlying tolling rule prevailed over statute of limitations].)

With the exception of the claim for failure to furnish accurate itemized wage statements, the trial court erred in ruling Hildebrandt's claims were time barred.

## DISPOSITION

The summary adjudication of Hildebrandt's claim for failure to furnish accurate itemized wage statements is affirmed. In all other respects the summary judgment is reversed. Hildebrandt is awarded costs.

**CERTIFIED FOR PUBLICATION**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

DHANIDINA, J.